**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL PEASTER,**<br><br>       **Plaintiff,**<br><br>**vs.**<br><br>**McDONALD'S CORPORATION, a Delaware corporation, and CHRISTOPHER KEMPCZINSKI,**<br><br>       **Defendants.** | **Case No. 1:22-cv-07037**<br><br>**Honorable Nancy L. Maldonado** |

**MCDONALD'S CORPORATION AND CHRISTOPHER KEMPCZINSKI'S**
**MEMORANDUM IN SUPPORT OF THEIR**
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

Defendants McDonald's Corporation ("McDonald's") and Christopher Kempczinski ("Kempczinski") (together, "Defendants"), by and through the undersigned counsel, hereby move pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) to dismiss with prejudice the claims asserted in Plaintiff Michael Peaster's ("Plaintiff") Complaint (ECF No. 1).

## INTRODUCTION

On December 14, 2022, Plaintiff filed his Complaint, which purports to bring four (4) different counts against both McDonald's and its Chief Executive Officer, Kempczinski, including: (1) claims of disparate treatment, (2) hostile work environment, and (3) retaliation, all under 42 U.S.C. § 1981, and (4) intentional infliction of emotional distress. (ECF No. 1 *generally*). Plaintiff's claims are unsupported by the undisputable facts and further undermined by his own allegations. The claims are also inconsistent with McDonald's values. If this matter were to proceed past the pleading stage, the facts would ultimately show that McDonald's did not discriminate against Plaintiff and that Plaintiff's employment was, in fact, terminated as a result of his serious performance deficiencies. Even at the pleading stage, however, it is clear that the Complaint is facially deficient as a matter of law and should be dismissed, *with prejudice*, for a number of reasons:

*First*, Plaintiff has failed to satisfy the "but for" standard required to establish a *prima facia* case for his claims because he pleads in the Complaint that the Defendants' alleged acts of discrimination and retaliation were motivated by *more* than just his race. *See Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020) (holding that in order to sustain a Section 1981 claim, a plaintiff must allege that his race was the "but for" cause of the alleged adverse action). Further, Plaintiff's disparate treatment and retaliation claims rest

1

on actions allegedly taken by Defendants that do not rise to the level of being materially adverse actions sufficient to support the asserted claims.

*Second*, Plaintiff's allegations supporting his hostile work environment claims fall far short of meeting the severe or pervasive standard required to show that the conduct "altered the conditions of employment." *Holmes v. Housing Authority of Joliet*, No. 14-c-3132, 2015 WL 1826676, at *6 (N.D. Ill. Apr. 20, 2015). Dismissal of Plaintiff's hostile work environment claims is also appropriate because they are wholly duplicative of Plaintiff's other claims. *Williams v. Forest Pres. Dist. of Cook Cty.*, No. 09 CV 7810, 2010 WL 3909475, at *2 (N.D. Ill. Oct. 1, 2010) (dismissing Plaintiff's hostile work environment claim because it was duplicative of her Title VII discrimination claim).

*Third*, Plaintiff claims that he engaged in allegedly protected conduct and subjected him to retaliation by Defendants as a result. Fatal to this retaliation claim, however, is his failure to specifically plead that he engaged in any conduct that is *in fact* protected by Section 1981. *O'Leary v. Accretive Health, Inc*., 657 F.3d 625, 631 (7th Cir. 2011) (A plaintiff must show that he "took some step in opposition to a form of discrimination that the statute prohibits.").

*Fourth*, Plaintiff's intentional infliction of emotional distress claims are "inextricably linked" to his claims alleging civil rights violations and are therefore preempted by the Illinois Human Rights Act ("IHRA"). *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) ("IHRA preempts all state law claims that seek redress for conduct constituting a civil rights violation."). Furthermore, even if his claims were not preempted (which they are), they fail to allege the kind of outrageous conduct required to successfully plead intentional infliction of emotional distress under prevailing law. *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017)

("Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if []he establishes that…the defendant's conduct was truly extreme and outrageous.").

*Fifth*, Plaintiff has failed to plead that Kempczinski had any specific intent to discriminate and/or retaliate against him on the basis of his race or that Kempczinski participated in any other constitutional deprivation of Plaintiff's rights, which is required to maintain claims against Kempczinski individually. *See Holmes v. Hous. Auth. of Joliet*, No. 14-C-3132, 2014 WL 6564949, at *6 (N.D. Ill. Nov. 20, 2014) ("[A]n individual defendant can be liable 'only if the supervisor causes or participates in a constitutional deprivation'").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Overall, the allegations in a complaint must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

## ARGUMENT

### I.   Plaintiff's Allegations Do Not Sufficiently Establish Claims Of Disparate Treatment Or Retaliation And Must Be Dismissed.

Plaintiff's Complaint alleges that he was subject to disparate treatment and retaliation based on his race and alleged protected activity. But these claims must be dismissed because: (i) Plaintiff has failed to sufficiently show that "but for" his race or, alternatively, "but for" his alleged

protected activity, he would not have suffered such adverse treatment; and (ii) the majority of Plaintiff's allegations presented to support his disparate treatment and retaliation claims, even if true (which they are not), do not amount to materially adverse actions.

First, Plaintiff has failed to show that any alleged adverse actions occurred "but for" his race or, alternatively, "but for" his alleged protected activity. The Supreme Court's decision in *Comcast* is explicitly clear that a plaintiff alleging claims under Section 1981 must plead that, **solely** "but for" their race, an adverse action would not have occurred. 140 S. Ct. at 1019 (emphasis added). Plaintiff has only lodged conclusory allegations that unnamed "White Officers" were treated more favorably than he was but, critically, he has failed to include any allegations upon which a reasonable fact finder could conclude that any of these alleged adverse employment actions were based on his race. (*See* ECF No. 1 *generally*). It is well-settled that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth…After excising the allegations not entitled to the presumption, we determine whether the remaining factual allegations plausibly suggest an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Further, Plaintiff admits in his Complaint that at least one major security incident occurred under his supervision during a trip to New York. (ECF No. 1 at ¶¶ 57-59). The importance of Plaintiff's job – responsibility for protecting the CEO and senior leadership team of one of the world's largest publicly traded companies – cannot be overstated. *See* (ECF No. 1 at ¶ 18) (Plaintiff describes his role as "*the* Officer responsible for Kempczinski's personal security"). The fact that Plaintiff has admitted to even one performance lapse in this critical role undermines any argument that his employment would not have been terminated "but for" his race or alleged protected activity. *See James v. City of Evanston*, No. 20-CV-00551, 2021 WL 4459508, at *10

(N.D. Ill. Sept. 29, 2021) ("[D]iscriminatory animus cannot be bootstrapped to another independent motivation" in pleading Section 1981 claims.).

Also fatal to his Section 1981 claims is the fact that Plaintiff is alleging that his race *and* his alleged protected activity (which, as discussed below, is not actually protected by Section 1981) were both the "but for" causes of the adverse employment actions that form the basis of his Complaint. *See Arora v. Nav Consulting, Inc*., No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022) ("As courts in this Circuit have interpreted *Comcast*, a plaintiff cannot allege multiple discrimination theories as the 'but for' cause for a Section 1981 violation....Put differently, a plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision."). In other words, Plaintiffs' identification of multiple possible motives for the alleged adverse treatment contradicts any possible assertion that race was *the* determining factor, and, therefore, Plaintiff has pled himself out of his Section 1981 disparate treatment and retaliation claims. They require dismissal, *with prejudice.*

Second, Plaintiff's Complaint lists a number of ways in which he was allegedly treated disparately due to his race and/or alleged protected activity. Defendants specifically dispute all of the allegations of adverse employment actions cited in the complaint, with the exception of the decision to terminate Plaintiff's employment for poor performance. While Defendants reserve the right to challenge the truth of the allegations asserted should this litigation proceed, for purposes of this Motion, the allegations include:[1]

- Kempczinski allegedly "intentionally avoided" Plaintiff, canceled a meeting with Plaintiff twice, and failed to congratulate Plaintiff on his promotion ;

---

[1] Defendants accept all well-pleaded factual allegations in the Complaint as true for the purposes of this Motion but do not waive their right to challenge the truth of the allegations asserted and/or to assert any and all applicable justifications for their actions and/or affirmative defenses if this Motion is denied in part or in whole.

- Desiree Ralls-Morrison[2] refused to approve Plaintiff's request to hire more security personnel, fill a certain role on his team, or confirm that he could fly on the corporate jet, which "relegated [him] to fly commercial"; and

- Kempczinski's and Ralls-Morrison's criticisms of Plaintiff's performance.

(ECF No. 1 at ¶¶ 30, 46, 50, 59, 84). None of these alleged actions caused Plaintiff actual injury. As such, they do not rise to the level of materially adverse actions such that they can serve as a basis of Plaintiff's disparate treatment or retaliation claims. *See Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009) ("Federal law protects an employee only from retaliation that produces an injury, and, therefore, an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee."); *Brown v. Advoc. S. Suburban Hosp*., 700 F.3d 1101, 1107 (7th Cir. 2012) ("'[P]ersonality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers' are not actionable"…. and we think that getting a 'cold shoulder' from your boss easily falls within this non-actionable category."); *Victor v. Vill. of Hoffman Ests*., No. 13 C 00921, 2016 WL 232420, at *9 (N.D. Ill. Jan. 20, 2016) ("'Less favorable evaluations' are generally not materially adverse actions."); *Lugg v. Sutton*, No. 18-CV-1412-JES-JEH, 2021 WL 3673824, at *26 (C.D. Ill. Aug. 18, 2021) ("In sum, 'not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment

---

[2]To the extent that Ralls-Morrison is referred to in Plaintiff's Complaint as a decision-maker (e.g. "Ralls Morrison informed Peaster he is [sic] being terminated effective December 31, 2022 [and] claimed that Peaster had performed poorly as Vice-President of Global Safety, Security, and Intelligence" ECF No. 1 at ¶ 11), the Court may take judicial notice of the fact that Ms. Ralls-Morrison is also an African American executive at McDonald's (*see* PR Newswire, *McDonald's Names Desiree Ralls-Morrison as General Counsel and Corporate Secretary* (Mar. 29, 2021), https://www.prnewswire.com/news-releases/mcdonalds-names-desiree-ralls-morrison-as-general-counsel-and-corporate-secretary-301257908.html). *Ocholi v. SkyWest Airlines*, No. 11-C-0310, 2012 WL 3150310, at *1 (E.D. Wis. July 31, 2012) (in considering a Rule 12(b)(6) motion to dismiss, courts take as true "all well-pled facts alleged, *taking judicial notice of matters within the public record,* and drawing all reasonable inferences in the plaintiffs' favor) (emphasis added). Situations in which discrimination allegations are made against decisionmakers belonging to the same protected class as the plaintiff are generally looked upon with higher scrutiny by courts. *See Ineichen v. Ameritech*, 410 F.3d 956, 960 (7th Cir. 2005) (holding that the plaintiff "must present some evidence to show that it is not surprising that her supervisors would discriminate against her" despite belonging to the same protected class as the plaintiff).

actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'…. In this case, a new chair within the education department arrived and started making changes to purportedly fit budgetary and student needs."). To summarize, none of the harm Plaintiff alleges he suffered amounts to materially adverse actions or resulted in any legally recognizable injury, with the exception of the termination of his employment. Therefore, any disparate treatment claim based on allegations other than the termination of his employment must be dismissed *with prejudice*.

## II. Plaintiff Does Not Allege Conduct Amounting To A Hostile Work Environment, And His Hostile Work Environment Allegations Are Duplicative Of His Other Claims.

In addition to his disparate treatment and retaliation claims, Plaintiff has alleged that he suffered a hostile work environment. (ECF No. 1 at ¶¶ 91-99). However, these claims should be dismissed because: (i) Plaintiff has not alleged sufficient severe or pervasive conduct based on race to sustain these claims; and (ii) these claims are duplicative of the other claims raised in the Complaint.

To state a claim for race discrimination based on a hostile work environment under Section 1981, a plaintiff must show that: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Cole v. Bd. of Trustees of N. Illinois Univ.,* 838 F.3d 888, 895–96 (7th Cir. 2016). With respect to the severe or pervasive element, "the conduct must be sufficiently severe or pervasive to alter the conditions of employment. Offhand comments, isolated non-severe incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Holmes,* 2015 WL 1826676, at \*6.

Again, Defendants specifically dispute the allegations of conduct included in Plaintiff's Complaint are true. However, for purposes of this motion, the specific conduct rising to the level of a hostile work environment alleged by Plaintiff includes: (i) his claim that Kempczinski treated Peaster like he was "an invisible officer" (ECF No. 1 at ¶ 20); (ii) his assertion that he was not allowed to manage his department simply because his requests to (a) increase his department's budget; (b) fill a certain open position; and (c) recruit his own replacement were rejected by the Company (ECF No. 1 at ¶¶ 23-25; 32; 33; 93); (iii) Plaintiff's assertion that he was not allowed "to meet with the CEO, [or] fly on the Company jet" (ECF No. 1 at ¶ 93b); (iv) Plaintiff's claim that Kempczinski did not recognize or congratulate Plaintiff on his promotion on one occasion on or about June 29, 2022 (ECF No. 1 at ¶ 30); (v) Plaintiff's belief that he was subjected to "false criticism" concerning his performance (ECF No. 1 at ¶ 93e); and (vi) the termination of his employment. (ECF No. 1 at ¶ 93f). Because these are all the same fact allegations upon which Plaintiff bases his discrimination and retaliation claims, his hostile work environment claim must be dismissed. *See Marshall v. C & S Rail Servs., LLC*, No. 1:19CV986, 2021 WL 1341801, at *11 (M.D.N.C. Apr. 9, 2021) (finding that the plaintiffs' race discrimination claim under § 1981 was duplicative of plaintiffs' hostile work environment and disparate treatment claims and therefore should be dismissed); *Williams,* 2010 WL 3909475, at *2 (dismissing Plaintiff's hostile work environment claim because it was duplicative of her Title VII discrimination claim).

Plaintiff's allegations also do not rise to the level of severe or pervasive conduct such that he can sustain these claims under Section 1981 *as a matter of law*. *See Simon v. Efie's Canteen*, No. 17 C 3229, 2018 WL 2320936, at *4 (N.D. Ill. May 22, 2018) (holding that the plaintiff's claim that her supervisor "went out of his way not to interact with [plaintiff] and treated other waiters at the restaurant more favorably….is not sufficiently offensive to have created a hostile

work environment."); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (holding that there was no sustainable hostile work environment claim where employee alleged that her supervisor "treated her in a rude, abrupt, and arrogant manner, ignored her work-related suggestions and failed to keep her informed about changes at work"); *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625–26 (7th Cir. 2004) ("unfriendly" behavior of co-worker insufficient for hostile work environment). Because Plaintiff's allegations, even accepted as true, cannot support a hostile work environment claim under Section 1981, these claims are subject to immediate dismissal *with prejudice.*

### III.   Plaintiff's Complaint Fails To Show That He Engaged In Protected Activity To Support His Retaliation Claims.

In addition to the reasons discussed *supra*, Plaintiff's retaliation claims are also subject to dismissal because he has not alleged that he engaged in any activity protected under Section 1981. "To state a retaliation claim under § 1981 based on events occurring in the workplace, an employee must show that []he suffered a materially adverse action because []he engaged in protected activity." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016). Plaintiff's claims fail because he has not identified any activity in which he engaged that is protected by Section 1981.

It is axiomatic that to have engaged in activity protected by Section 1981, a plaintiff must show that he "took some step in opposition to a form of discrimination that the statute prohibits." *O'Leary*, 657 F.3d at 631. Here, Plaintiff does not identify *any* activity in which he opposed a form of discrimination prohibited by Section 1981 (*i.e.*, discrimination on the basis of race as to the "mak[ing] and enforc[ing of] contracts." 42 U.S.C. § 1981(a)) such that his activity would be protected by the statute. Instead, Plaintiff alleges only that he engaged in protected activity when: (i) he "confronted Kempczinski during Kempczinski's Company town hall concerning

9

Kempczinski's racial texts"; and (ii) when "he was interviewed by Company lawyers about a separate racial discrimination lawsuit." (ECF No. 1 at ¶ 80).

Plaintiff's own summary of his alleged remarks to Defendant Kempczinski during the Town Hall, however, does not reflect any advocacy against unlawful discrimination under Section 1981:

> To those employees who agreed with Christopher Kempczinski's comments, think about their fellow employees who are in the room who live in the neighborhoods being discussed. Think about the kids who are in their homes and playing on playgrounds who are killed by stray bullets. We cannot broad brush the violence in Chicago to make it appear that all parents who have children who are victims to gun violence are bad parents. We have to have empathy and compassion for the majority of families who live in tough communities that work hard to provide for their family and keep them safe.

(ECF No. 1 at ¶ 14). Plaintiff's alleged remarks include no advocacy against discrimination prohibited by the statute, and his attempt to now characterize these remarks as advocating against discrimination that was protected by Section 1981 by now reflecting that he was at the time speaking "truth to power" is an unreasonable stretch that finds no support in the relevant case law. To be clear, activity protected under Section 1981 must report or advocate against *discrimination that is unlawful under Section 1981*. *See Narbaiz v. TCF Fin. Corp.*, No. 08 C 17, 2009 WL 1346246, at *2 (N.D. Ill. May 8, 2009) ("Although 'a report of discrimination to a supervisor may be statutorily protected activity…the report must include a complaint of…discrimination or sufficient facts to raise that inference."). In other words, "to be classified as a statutorily protected activity the complaint needs to at least say something to indicate [discrimination] is at issue." *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011) (internal quotations omitted). Nothing in Plaintiff's alleged remarks suggests that he was complaining of discriminatory treatment of any employees by McDonald's on the basis of race – indeed, his alleged remarks do not even mention race. *See Narbaiz*, 2009 WL 1346246, at *2 (finding that the plaintiff's

10

complaints did not amount to protected activity because she "never specifically mentioned her race or national origin, or the race or national origin of the co-employee about whom she complained."). Also dispositive is the fact that Peaster states in the complaint that the alleged retaliation was the result of him "publicly questioning [Kempczinski's] sincerity in purporting to apologize for his racist texts." (ECF No. 1 at ¶ 39). Plaintiff cannot now go back in time and recharacterize his comments that never mentioned race, or otherwise complained about race discrimination impacting employees at McDonald's, in order to establish his prima facie case. Plaintiff can only rely on what he claims he said at the time as presented and framed within the four corners of his complaint to avoid dismissal of his claim. Unfortunately for Plaintiff, the alleged comments he claims to have made at the Town Hall meeting cannot be reasonably construed as speech protected under Section 1981, which is fatal to his retaliation claim.

Further, with respect to his alleged "interview," Plaintiff alleges only that he "candidly answered each question posed by the Company's lawyers." (ECF No. 1 at ¶ 39).[3] Plaintiff again does not allege that he engaged in any advocacy or made any reports of discrimination during this "interview" and, thus, it also does not qualify as protected activity. And, with respect to any information shared during this "interview," Plaintiff also fails to allege that any of the purported decisionmakers for the adverse actions identified in his Complaint – including Ms. Ralls-Morrison or Kempczinski – had any knowledge of this interview or Plaintiff's statements therein, further requiring the dismissal of Plaintiff's retaliation claim. *See Cuevas v. Monroe Street City Club, Inc.*, 752 F. Supp. 1405, 1412 (N.D. Ill. 1990) (stating that where a decisionmaker making an

---

[3] With respect to these allegations, McDonald's also notes that this "interview" was covered by the attorney-client privilege and the work product doctrine and that McDonald's has not waived such privilege.

adverse employment decision does not know that the employee asserted a protected right, there is no causal link). These deficiencies cannot be cured by repleading.

Accordingly, because Plaintiff has not alleged that he engaged in protected activity, his retaliation claims must be dismissed.

**IV.  Plaintiff's Intentional Infliction Of Emotional Distress Allegations Are Preempted By the IHRA And, Even If Not Preempted, Are Not Sufficient To Support His Claims.**

Plaintiff has also alleged intentional infliction of emotional distress ("IIED") claims against Defendants; however, these claims are "inextricably linked" to his claims alleging civil rights violations and are therefore preempted by the IHRA. *Krocka*, 203 F.3d at 516 ("IHRA preempts all state law claims that seek redress for conduct constituting a civil rights violation.")  Where a state common law claim is "inextricably linked" to a civil rights violation, it falls within the purview of the IHRA and is also preempted. *Beard v. City of Chicago*, 299 F. Supp. 2d 872, 874 (N.D. Ill. 2004).

Here, Plaintiff relies on the same allegations to support his IIED claims as his civil rights claims, and it is clear from the Complaint that the heart of his allegations related to his IIED claims are the allegations of discrimination.  (ECF No. 1 at 111-122).  The Seventh Circuit has explicitly held that a claim of intentional infliction of emotional distress is preempted by the IHRA when "the core of [the plaintiff's] theory" is that the plaintiff was a victim of racial harassment.  *Smith v. Chicago Sch. Reform Bd.,* 165 F.3d 1142, 1151 (7th Cir. 1999).

However, even if Plaintiff's IIED claims are not preempted (which they are), they are still woefully deficient.  "Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if []he establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there

was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards*, 869 F.3d at 566 (citing *Feltmeier v. Feltmeier,* 207 Ill. 2d 263, 268–69, 278 Ill. Dec. 228, 798 N.E.2d 75, 80 (2003)).

Courts routinely dismiss IIED claims where "the alleged conduct is not sufficiently [extreme and outrageous]." *Metro. All. of Police v. Ne. Illinois Reg'l Commuter R.R. Corp*., No. 18-cv-02468, 2020 WL 814870, at *5 (N.D. Ill. Feb. 19, 2020) (citing *Cook v. Winfrey*, 141 F.3d 322, 332 (7th Cir. 1998)). The Illinois Supreme Court has determined that "to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society." *Feltmeier*, 207 Ill. 2d at 274, 278 Ill. Dec. 228, 798 N.E.2d 75. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to support an IIED claim. *Gross v. Chapman*, 475 F. Supp. 3d 858, 863–64 (N.D. Ill. 2020) (quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 127 Ill. Dec. 724, 533 N.E.2d 806 (1988)). Further, "Illinois courts 'often hesitate to find a claim for [IIED] in employment situations' based on concern that 'if everyday job stresses resulting from discipline, personality conflicts, job transfers, or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action.'" *Metro. All. of Police*, 2020 WL 814870 at *5 (quoting *Graham v. Commonwealth Edison Co*., 318 Ill. App. 3d 736, 252 Ill. Dec. 320, 742 N.E.2d 858, 866 (2000)).

The kind of conduct alleged by Plaintiff here falls far short of "extreme" conduct that goes beyond "all possible bounds of decency" as is required to establish an IIED claim, particularly in the employment context. *Feltmeier*, 207 Ill. 2d at 274, 278 Ill. Dec. 228, 798 N.E.2d 75 ("Illinois courts have found behavior in the workplace to rise to the level of extreme and outrageous conduct only when the behavior is truly egregious."); *Welsh v. Commonwealth Edison Co*., 306 Ill. App.

13

3d 148, 239 Ill. Dec. 148, 713 N.E.2d 679, 684 (1999) ("[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress.").

**V.      There Are No Allegations In The Complaint Giving Rise to a Reasonable Inference That Kempczinski Participated In Or Otherwise Orchestrated Any Of The Adverse Employment Actions Alleged In The Complaint**.

To adequately plead a race discrimination claim under 42 U.S.C. § 1981(a)(1) against an individual, Plaintiff must "aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his] race." *Trent v. D.T. Chicagoland Express, Inc.*, No. 18-C-5090, 2019 WL 498943, at *2 (N.D. Ill. Feb. 7, 2019) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). In addition to the multitude of pleading deficiencies outlined above, Plaintiff's claims against Kempczinski also fail because no trier of fact could conclude that Kempczinski intended to discriminate or retaliate against Plaintiff or otherwise deprive Plaintiff of his constitutional rights based on the allegations contained in the Complaint. *James v. Get Fresh Produce, Inc.*, No. 18-C-4788, 2018 WL 6199003, at *7 (N.D. Ill. Nov. 28, 2018) (citing *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006)) (A plausible claim under Section 1981 must include facts upon which a trier of fact could conclude that a defendant intended to discriminate on the basis of plaintiff's race, and the discrimination concerned the making or enforcing of a contract.)

Moreover, there are no allegations in the Complaint upon which one could conclude that Kempczinski caused or otherwise participated in any of the alleged adverse employment actions asserted in the Complaint with the *intent* to discriminate against Plaintiff because of his race or retaliate against him because of anything he may have done. In fact, Plaintiff's specific allegations

against Kempczinski are limited to the assertion that he did not engage or meet with Plaintiff, did not acknowledge Plaintiff's promotion during one meeting, and did not allow Plaintiff to fly on the corporate jet. (*See* ECF No. 1 at ¶¶ 84, 93). However, Plaintiff does not allege any facts to establish that Kempczinski's motive or reason for engaging in such alleged conduct – none of which even amounts to an adverse action – had anything to do with Plaintiff's race, thereby laying bare the fact that the entire claim against Kempczinski is merely conclusory. This deficiency is fatal.

Further, the Complaint contains no allegation that Kempczinski participated in any act adverse to Plaintiff that rises to the level of an actionable "constitutional deprivation." *See Holmes,* 2014 WL 6564949, at *6 (holding that "an individual defendant can be liable 'only if the supervisor causes or participates in a constitutional deprivation'") (citing *Smith v. Bray,* 681 F.3d 888, 889 (7th Cir. 2012)). Beyond mere speculation and suspicion, Plaintiff does not plead any fact allegation that establishes Kempczinski's personal participation in the only actual adverse action against Plaintiff – the termination of his employment. (*See,* ECF No. 1 at ¶ 63) (Ralls-Morrison informed Plaintiff of his termination because she had lost confidence in his abilities to protect the CEO). Where, as here, there is no alleged participation by a Section 1981 defendant in a specified adverse action directed against a plaintiff that has an unlawful motivation, the plaintiff has failed to state a plausible cause of action under Section 1981. Accordingly, Plaintiffs' Section 1981 claims against Kempczinski must be dismissed for this additional reason.

## CONCLUSION

For all of the reasons discussed herein, Defendants respectfully request that the Court dismiss Plaintiff's claims *with prejudice*.

15

Dated: February 13, 2023

Respectfully submitted,

By:    /s/*Nigel F. Telman*        

Nigel F. Telman
Alexandra S. Oxyer
Proskauer Rose LLP
70 W Madison, Suite 3800
Chicago, IL 60602-4342
Phone: 312-962-3548
Fax: 312-962-3551
ntelman@proskauer.com
aoxyer@proskauer.com

*Attorneys for Defendants McDonald's Corp. and Christopher Kempczinski*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on February 13, 2023, the foregoing document was filed with the Clerk of the Court and notice was sent via ECF notification to:

Carmen D. Caruso
William B. Whitner
CARMEN D. CARUSO LAW FIRM
77 West Washington Street
Suite 1900
Chicago, Illinois  60602
cdc@cdcaruso.com
wbw@cdcaruso.com

*/s/ Nigel F. Telman*
Nigel F. Telman