UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL PEASTER,<br><br>        Plaintiff,<br><br>vs.<br><br>McDONALD'S CORPORATION, a Delaware corporation, and CHRISTOPHER KEMPCZINSKI,<br><br>        Defendants. | Case No. 1:22-cv-07037<br><br>Honorable Lindsay C. Jenkins<br><br>Jury Trial Demanded |

**PLAINTIFF'S OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**Submitted by:**

Carmen D. Caruso (#6189462) – cdc@cdcaruso.com
William B. Whitner (#6331564) – wbw@cdcaruso.com
CARMEN D. CARUSO LAW FIRM
77 W. Washington St., Ste. 1900
Chicago, IL 60602
T: (312) 626-1160
*Attorneys for Plaintiff*

I.  **INTRODUCTION**

Defendants defy settled standards of review under Rule 12(b)(6) and ask the Court to disregard Plaintiff's well pled fact allegations. The Complaint contains more than "sufficient factual matter to state a facially plausible claim to relief—one that 'allows the court to draw the reasonable inference' that [each] defendant committed the alleged misconduct" and it properly gives "fair notice" of the claims "and the grounds upon which [they] rest …" *Betts v. Option Care Enterprises, Inc.*, No. 18-CV-4023, 2019 WL 193914, at *5 (N.D. Ill. Jan. 15, 2019), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. *Id*.

II.  **FACT SUMMARY**

African American Plaintiff Michael Peaster ("Peaster") worked at McDonald's for 35 years, in which he consistently met or exceeded McDonald's standards (and Peaster was never rated below a "Significant Performer" nor was he ever written up for performance issues or concerns). (¶66)[1]. Over the years, McDonald's recognized Peaster's excellent performance by awarding him numerous awards and recognition, including the President Award. (*Id*.). For ten years before his termination, Peaster led McDonald's corporate safety, security, and intelligence department (¶7), with responsibility to protect the Company's people, physical assets, and brand, and he supervised a team of safety, security, and intelligence professionals. (¶7).[2] In late 2021, the company invited the employees at its corporate headquarters on Carpenter Street in Chicago,

---

[1] All paragraph cites ("¶") pertain to the Complaint (R. 1).
[2] Effective January 1, 2022, McDonald's restored Peaster to the Officer level, a position he had previously enjoyed. (¶8). The circumstances of Peaster's earlier Officer status, his deprivation of the earlier Officer status, and his regaining Officer status are beyond the scope of the complaint. But to be clear, Peaster's job duties were unchanged for the 10 years before his termination.

1

including Peaster, to a "town hall" meeting, where the company's CEO (Defendant Christopher Kempczinski) attempted to defuse the controversy that had erupted across Chicago (and beyond) after the media published his text message to the Mayor of Chicago that was widely condemned as racist. (¶¶12-14).[3] Peaster (and his co-workers) listened, but to Peaster, it was clear that Kempczinski, the CEO of one of the world's largest companies that serves minority customers and hires minority employees, was being evasive, and failed to grasp why his text was so racially offensive. (¶14). Therefore, when Kempczinski opened the floor to questions, Peaster stated publicly (in words or substance):

> To those employees who agreed with Christopher Kempczinski's comments, think about their fellow employees who are in the room who live in the neighborhoods being discussed. Think about the kids who are in their homes and playing on playgrounds who are killed by stray bullets. We cannot broad brush the violence issues in Chicago to make it appear that all parents who have children who are victims to gun violence are bad parents. We have to have empathy and compassion for the majority of families who live in tough communities that work hard to provide for their family and keep them safe. (¶14).

Kempczinski did not respond to Peaster during the town hall, or afterwards, even though Peaster's position required that they interact closely for security purposes. (¶18). Peaster received his re-promotion effective January 1, 2022 (see Fn. 2), making him an "Officer" who should have been treated with substantial respect, and creating the outward appearance that all was well. But his re-promotion was a facade. Kempczinski had no intention of working with Peaster or treating him like an Officer. Throughout 2022, Kempczinski and his minions (including the General Counsel, Desiree Ralls-Morrison), orchestrated a campaign to humiliate Peaster to where he would resign, and to terminate him when he did not resign. For starters, Kempczinski avoided Peaster in

---

[3] Kempczinski and the Mayor exchanged text messages after a teenager was shot in her car at a McDonald's restaurant drive-through. In his text message, Kempczinski appeared to be putting the blame on African American parents for the violence experienced by African American youth, as opposed to expressing sympathy or remorse for the victim of the shooting. (¶12).

ways that were insulting to Peaster, and worse, undermined Peaster in his role as an Officer. (¶18).

Without limitation:

- In the spring of 2022, the company (meaning Kempczinski) denied Peaster's request for an increase to his department budget to enhance corporate security. No explanation was given. (¶¶24-25).

- In the summer of 2022, the Company blocked Peaster from filling open positions in his department, but white VPs were allowed to fill open positions in their departments. (¶32). Peaster complained of this disparity to his boss, but to no avail. (*Id.*).

- By June 2022, the situation was so bad that Peaster asked to meet with Kempczinski. (¶¶26-29). Peaster followed Officer's protocol to speak to the CEO, but Kempczinski cancelled the meeting Peaster scheduled, and ducked Peaster's attempt to reschedule. *Id.*

- Kempczinski led a meeting of the company Officers on June 29, 2022, at which the protocol was to publicly acknowledge and welcome new Officers. (¶30). Kempczinski ignored Peaster at this meeting, a public slap in the face noticed by the other Officers. *Id.*

These events were departures from company protocol. (¶¶25, 27-30). Peaster was not treated the way the company routinely treats its white Officers. (¶¶32-34, 84). Peaster felt like the "invisible man." (¶20).[4] Next, in July 2022, the company arranged for Peaster to be interviewed by the lawyers that were defending the company in another lawsuit in which the company is accused of violating the federal civil rights law in its treatment of other African American executives. (¶39). After this interview, the company and Kempczinski escalated their pre-established campaign to eliminate Peaster. McDonald's owns a private jet that its Officers use for business travel. In August 2022, Kempczinski scheduled a two-city trip to Mexico City, Mexico and São Paulo, Brazil, and Peaster was tasked with managing security on this trip. (¶¶41-43). As an Officer, Peaster should have flown on the company jet with Kempczinski (and Ralls-Morrison). (¶¶44-45). But Peaster was made to fly commercial and meet his security clients in Mexico, then

---

[4] See https://teachersinstitute.yale.edu/curriculum/units/2016/2/16.02.08/5 discussing the "Invisible Man" and its exploration of the effects of racism on African Americans.

3

Brazil. (¶¶46-48). And then, Kempczinski (and Ralls-Morrison) blamed Peaster for occurrences that would have been avoided if Peaster had been present and/or that they are misstating or exaggerating. (¶¶49-52). Then, in October 2022, Kempczinski complained that his protection was inadequate after labor union advocates entered a New York City ballroom while he was present. (¶57). There was no complaint that Kempczinski had been unsafe – rather, Kempczinski demands to be insulated from critics of the way the company treats restaurant workers. (¶58).

These events must be considered in their totality. Kempczinski (aided by his general counsel) was engaged in a shocking repudiation of company customs, practices, and protocols. (¶71). Company Officers routinely fly on the company's private jet and routinely meet with the CEO to discuss business issues and are given latitude in running their departments. (¶¶44-45). Kempczinski was plainly insulting, repudiating, and intentionally inflicting emotional pain on Peaster, and setting Peaster up for unwarranted criticism by making it that much harder for Peaster to deliver the level of security and intelligence that the company needed. (*See* ¶¶19-25, 29, 31-38, 40, 46-52, 54-56, 59-60, 62, 65, 67). By October 2022, Peaster could not bear the burden of knowing his department was underfunded, that his concerns were being ignored, and that he was being falsely accused of alleged lapses that were either non-existent or blown out of proportion, or which would have been prevented 'but for' Kempczinski's desire to keep Peaster out of sight and the Company's (through Kempczinski) rejection of Peaster's staffing requests. (¶¶60-62). Fearing there would be a *real* security incident in which people would be harmed, Peaster suffered increasingly sleepless nights, stress, and anxiety. (¶ 62).

Peaster scheduled a meeting with Ralls-Morrison to address his concerns (because he knew from June attempting to meet Kempczinski would be futile). (¶62). However, instead of addressing Peaster's legitimate concerns about Kempczinski, the safety of the Company's property

4

and personnel, and the lack of funding for Peaster's department, Ralls-Morrison used the meeting to inform Peaster of his termination. (¶63). The decision to terminate Peaster came from or was approved by Kempczinski (¶71), and the proffered justifications for termination were pretextual. (¶67). Peaster's direct supervisor was not consulted. (¶67(a)), and concerns about Peaster's performance were not justified (¶67(b-c)).

### III. ARGUMENT

The facts in the Complaint, and the fair inferences they support, go far beyond what Plaintiff needs to survive this Rule 12(b)(6) challenge. See *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002), where the Supreme Court confirmed that an employment discrimination complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief.[5] Peaster clears this hurdle easily. Defendants assert fact challenges that are not ripe for consideration at the pleading stage.

#### A. Peaster Has Sufficiently Pled Disparate Treatment

To state a claim for disparate treatment based on race, a plaintiff must plausibly allege that they were subjected to intentional discrimination based on their race by pleading factual allegations to show: "(1) he is a member of a protected class, (2) [the defendant] had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract*.*" *Elzeftawy v. Pernix Group, Inc.,* 477 F. Supp. 3d 734, 772 (N.D. Ill. 2020). "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, *and the enjoyment of all benefits, privileges, terms, and conditions of the contractional*

---

[5] See also, *James v. Get Fresh Produce, Inc.*, 18 C 4788, 2018 WL 6199003, at *4 (N.D. Ill. Nov. 28, 2018) ("it does not take much to state a claim for employment discrimination under Title VII"); see also, *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 347 (7th Cir. 1999) ("In analyzing § 1981 claims, we apply the same standards as in Title VII cases"); and see *Guster-Hines v. McDonald's USA, LLC*, No. 20-CV-00117, 2021 WL 2633303, at *7 (N.D. Ill. June 25, 2021) (same).

5

*relationship,*" *CBOCS W., Inc. v. Humphries,* 553 U.S. 442, 450, 128 S. Ct. 1951, 1957, 170 L. Ed. 2d 864 (2008) (emphasis added). Peaster has undeniably plead all three elements sufficiently to survive a Rule 12(b)(6) motion. He is a member of a protected class as an African American (¶1); Defendants had the intent to discriminate against Peaster on the basis of race (¶¶84-85); and the discrimination concerned the making or enforcing of a contract (¶¶76-81).

### B. Peaster Has Alleged Race as the But-For Cause

Defendants err in arguing Peaster has failed to allege any adverse actions occurred "but for" his race. Peaster plainly alleges that McDonald's Corp. and Kempczinski (individually and through Ralls-Morrison and/or other Company employees) treated Peaster worse in comparison to white Officers at McDonald's (¶84) because of Peaster's race (¶¶1, 86).

Defendants cite *McAuley v. City of Chicago*, 671 F. 3d 611, 616 (7th Cir. 2011), to argue that legal and conclusory allegations reciting the elements of a claim are not entitled to a presumption of truth (R. 17, p. 1), but *McAuley* is not good law. In *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 F. App'x 609, 610-611 (7th Cir. 2013), a decision reached two years after *McAuley*, the Seventh Circuit held that conclusory allegations of discriminatory intent can suffice to plausibly state a claim.[6] But Peaster does much more than recite legal conclusions, which renders *McAuley* factually inapposite in addition to being bad law on the point that Defendants wish to rely upon. Peaster has presented substantial facts as discussed above, raising fact issues that must be resolved later in the case. As in *Petrovic*, where a defendant's challenge at the pleading stage was correctly rejected, the Defendants here are improperly attempting to try the case at the pleading stage. 513 F. App'x at 611.

---

[6] See also *Cole v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 925, 933 (N.D. Ill. 2014), citing this holding from *Petrovic*.

6

Defendants' reliance on *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020), *James v. City of Evanston*, No. 20-CV-00551, 2021 WL 4459508 (N.D. Ill. Sept. 29, 2021), and *Arora v. Nav Consulting, Inc.*, No. 21 C 4443, 2022 WL 7426211 (N.D. Ill. Oct. 13, 2022) is also misplaced. Peaster has expressly alleged "but for" causation, and thus complies with the holding of *Comcast Corp.*, 140 S. Ct. at 1019. See also, *Guster-Hines*, 2021 WL 263303 at *11 (finding "but for" causation was present with allegation that alleged discriminatory conduct happened because of race, as Peaster does in ¶87).[7] Unlike the plaintiffs in *James* and *Arora*, Peaster alleges that race and race alone was the but for cause of Defendants' discriminatory conduct. There is no confusion with other possible motives. The complaint leaves no doubt that race was the "but for" cause of the disparate treatment that Peaster suffered, culminating in his termination, because (A) Peaster is not claiming discrimination based on age or any other protected characteristic; (B) Peaster suffered disparate treatment in comparison to white Officers; (C) no motives other than race are alleged; and (D) the acts that separately give rise to Peaster's retaliation claims were race-based. McDonald's attempt to separate Peaster's race from its reaction to Peaster speaking as an African American on the subject of race at the town hall (¶¶12-16) and in the interview (¶¶39-40) is absurd. A jury must decide whether McDonald's treatment of Peaster following these incidents (which came after his 35 years of meritorious service

---

[7] *James* and *Arora* are distinct based on the facts. In *Arora*, the plaintiff based his Section 1981 claim on multiple overlapping motives, including race, national origin, ethnicity, and citizen status. *Arora*, 2022 WL 7426211, at *3. The *Arora* plaintiff did not plead the other motives (all but race), "in the alternative," but instead, explicitly asserted that the defendants' actions were motivated by the various factors. *Id.* Similarly, in *James*, the plaintiff alleged that the defendants bypassed certain zoning procedures to "avoid public scrutiny," which the court found to be "an independent motivation capable of standing apart from racially discriminatory animus." *James*, 2021 WL 4459508, at *10. In *James*, Judge Wood found that it "would be possible [for the *James* plaintiff] to allege that Defendants sought to evade public scrutiny because of racially discriminatory animus." *Id.* (emphasis in original). However, the Court found that the *James* plaintiff's allegations did not support that connection and dismissed the plaintiffs' Section 1982 claim without prejudice. *Id.* at *10, 15. Peaster does allege that Defendants' alleged conduct was because of race, but Judge Wood's comment further contradicts Defendants' arguments.

that warranted his re-promotion to the Officer level) was race-based rising to the "but for" level. At the pleading stage, Peaster meets his burden.[8]

Defendants fare no better when they try to "slice and dice" this case into a series of distinct events that would allegedly have no connection to each other, as they do when they discuss the criticism leveled at Peaster following the alleged the security lapse at the New York hotel where Kempczinski suffered the indignity of being approached by pro-labor activists. This particular incident was the latest in a long line of false criticisms against an African American who was being targeted for the race-based reasons that are plainly alleged and discussed above. Moreover, this incident serves to highlight how Defendants' refusal to allow Peaster to fill open positions and/or expand his budget to hire more security agents served the unlawful goal that Defendants intended, as their disparate treatment in not allowing Peaster to run his department the way white officers are allowed to run their departments gave Defendants the manufactured opportunity to level false or exaggerated criticisms of their African American Officer (more disparate treatment) culminating in his pretextual and discriminatory termination. In sum, there is nothing in this Complaint to suggest that Peaster has pled himself out of Court by presenting conflicting motives that would render 'but for" causation implausible. At the pleading stage, Peaster has adequately alleged "but for" causation. *Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 676

---

[8] Peaster need not identify white Officers who criticized Kempczinski on the basis of race but did not suffer adverse treatment. See *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012), where the Seventh Circuit abandoned the strict burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As explained in *Coleman*, which was discussing a plaintiff's burden at the Rule 56 stage: "In order to defeat summary judgment, the plaintiff one way or the other must present evidence showing that she is in a class protected by the statute, that she suffered the requisite adverse action (depending on her theory), and that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason. Put differently, it seems to me that the time has come to collapse all these tests into one. We have already done so, when it comes to the trial stage of a case. See, *e.g., EEOC v. Bd. of Regents of Univ. of Wisc. Sys.,* 288 F.3d 296, 301 (7th Cir.2002). It is time to finish the job and restore needed flexibility to the pre-trial stage." *Id.*

(N.D. Ill. 2022) ("Plaintiffs have alleged that they were discriminated against because of their race. At this Rule 12(b)(6) juncture, the FAC's general pleadings suffice.").

C. **Peaster Experienced Adverse Employment Actions**

As explained in *Kenese v. Catholic Charities of Archdiocese of Chicago*:

Adverse employment actions ... generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge.

18-CV-08272, 2021 WL 1192555, at *4 (N.D. Ill. Mar. 30, 2021); quoting *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). Per this definition, Peaster has pled facts showing it is plausible that he suffered an adverse employment action in lieu of Defendants' discrimination. (¶¶ 25, 33-37, 46, 51, 54, 59). The ultimate adverse employment action was that Peaster was terminated for pretextual reasons (¶63), but under *Kenese*, Peaster's allegations about how Kempczinski and his minion (Ralls-Morrison) and the Company made Peaster's job of protecting the Company and its executives extremely difficult via underfunding and personal exclusion from the CEO (¶¶40, 50, 57, 63) *are* adverse employment actions, thus making this case distinct from *Stpehens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). Kempczinski avoiding Peaster is not a normal workplace grievance when you consider that Peaster's job is to protect Kempczinski's safety and where, as here, this mistreatment of an Officer was a shocking departure from protocol. Defendants are trying to avoid reality by attaching labels or conclusions from easily distinguished cases that have sharply different, and much less severe facts.[9] [10]

---

[9] *Cf. Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012); *Victor v. Vill. Of Hoffman Ests.*, No. 13 C 00921, 2016 WL 232420, at *9 (N.D. Ill. Jan. 20, 2016); and *Lugg v. Sutton*, No. 18-CV-1412-JES-JEF, 2021 WL 3673824, at *26 (C.D. Ill. Aug. 18, 2021).

[10] Once again, many of the cases relied on by Defendants are inapplicable Rule 56 decisions. See: *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012), *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir.

### D. <u>Kempczinski cannot hide behind Ralls-Morrison</u>

McDonald's tries to deflect the allegations that Kempczinski orchestrated the campaign against Peaster by pointing to the involvement of Ralls-Morrison (*see* ¶¶11, 21, 23, 25, 28, 29, 33, 38, 40, 42, 46, 48, 49, 50, 54, 59, 63, 67), but the Complaint makes clear that Ralls-Morrison was Kempczinski's "stooge" – *i.e.,* she did his bidding. (¶85). This is another instance of Defendants' wrongfully seeking an undeserved evidentiary ruling at the pleading stage. There is absolutely no basis to do what McDonald's and Kempczinski are asking this Court to do at the pleading stage, which would be to conclude that "as a matter of law" Peaster cannot accuse a fellow African American from participating in the unlawful conduct directed against him. A reasonable person familiar with the shameful parts of American history could infer that Ralls-Morrison sold a fellow African American down the river to please Kempczinski and thus advance her career. Peaster has alleged plausible reasons as to why Kempczinski and McDonald's must answer for Ralls-Morrison's shameful conduct in this case. Moreover, there are ample allegations as to Kempczinski's personal involvement (see ¶¶18, 19, 28, 30, 37, 46, 48, 63). To dismiss Kempczinski at the pleading stage would be erroneous. See *Holmes v. Hous. Auth. Of Joliet*, No. 14 CV 3132, 2014 WL 6564949, at *6 (N.D. Ill. Nov. 20, 2014 (citing *Smith v. Bray*, 681 F.3d 888, 889 (7th Cit. 2012)) (holding a supervisor can be liable so long as he "causes or participates in a constitutional deprivation"); and see *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 901 (N.D. Ill. 2011) (personal involvement can mean "acquiesce[ing] in some demonstrable way to the alleged constitutional deprivation;" or if the "conduct causing the constitutional deprivation" occurred at his "direction or with [his] knowledge and consent."); and see *Guster-Hines*, 2021 WL

---

2009); *Victor v. Vill. of Hoffman Estates*, 13 C 00921, 2016 WL 232420 at *9 (N.D. Ill. Jan. 20, 2016); and *Lugg v. Sutton*, 18-CV-1412-JES-JEH, 2021 WL 3673824 (C.D. Ill. Aug. 18, 2021).

10

2633303, at *8 (holding Kempzinski in another lawsuit involving alleged discrimination against African American executives at high levels of McDonald's).

Thus Peaster's complaint complies with *James*, 2018 WL 6199003 at *7.[11] Defendants' argument that Plaintiff does not allege any facts "in the Complaint from which one could conclude that Kempczinski caused or otherwise participated in any of the alleged adverse employment actions … with the *intent* to discriminate against Plaintiff because of his race or retaliate against him because of anything he may have done," (R. 17, p. 14) ignores Plaintiff's allegations concerning Peaster publicly rebuking Kempczinski's racist texts (¶¶12-16) which Peaster states "he was punished for" as alleged in the complaint (¶16).[12] Furthermore, the Court should not ignore that Peaster challenged Kempczinski on race just as Kempczinski was attempting to temper the public's perception of him as a racist. It is plausible to infer Kempczinski would have a personal vendetta against an African American who publicly challenged his artificial *mea culpa*. Dismissing Kempczinski now would be an error.

### E. Peaster Has Pled Hostile Work Environment

To state a § 1981 hostile work environment claim, a plaintiff must allege that "(1) he was the subject of unwelcome harassment; (2) the harassment was based on race; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Kenese*, 2021 WL 1192555, at *6. Defendants challenge the third prong, but Peaster alleges a near yearlong campaign orchestrated by Kempczinski (and his minion, Ralls-Morrison) to demean, unfairly criticize, and

---

[11] Defendants also cite *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006), but that summary judgment case is distinct as it involves a factual question over whether the defendants knew the plaintiff's ethnicity.

[12] Relatedly, Defendants' citation to *Trent v. D.T. Chicagoland Express, Inc.*, 18 C 5090, 2019 WL 498943 (N.D. Ill. Feb. 7, 2019) supports Peaster's complaint. *Trent v. D.T. Chicagoland Express*, Inc., No. 18 C 5090, 2019 WL 498943, at *2 (N.D. Ill. Feb. 7, 2019) (denying a Rule 12(b)(6) motion finding "[a]ll [plaintiff] must allege to proceed on his discrimination claim is that [defendant] terminated him on the basis of his race.").

11

humiliate him.[13] Whether conduct is sufficiently severe or pervasive depends on "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive and whether it unreasonably interferes with an employee's work performance." *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018) (quoting *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017)); see also *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017). "[E]vidence that the workplace was both subjectively and objectively offensive" can satisfy the question of "whether the harassment was severe or pervasive enough to rise to the level of a hostile work environment." *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). Peaster clearly perceived the environment to be hostile. (¶61). *See e.g., Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The objective component will be a jury question. *Johnson v. Advoc. Health and Hosps. Corp.*, 892 F.3d 887, 901 (7th Cir. 2018); citing *Passananti v. Cook Cty.*, 689 F.3d 655, 669 (7th Cir. 2012).[14] The allegations here plausible. *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004).[15]

### F. Defendants' Argument That Peaster's Hostile Work Environment Claim and Claim For Disparate Treatment Are Duplicative Fails As A Matter of Law

Hostile work environment claims and claims for disparate treatment are not duplicative because they require proof of different elements. *Doe 1 v. City of Chicago*, 335 F. Supp. 3d 1098, 1105 (N.D. Ill. 2018); See, e.g., *Fulmore v. M & M Transp. Servs., Inc.*, No. 1:11-CV-00389-

---

[13] The hostile work environment included: refusing to recognize and congratulate Peaster in front of the company (R. 1, 30-31); refusing to allow Peaster to ride on the corporate jet with Kempczinski and other corporate officers but allowed Peaster's subordinates to do so (R. 1, 46); preventing Peaster from effectively managing his department, making it appear to the rest of the company that Peaster was incompetent (R. 1, ¶¶ 11, 21, 23, 25, 28, 29, 33, 38, 40, 42, 46, 48, 49, 50, 54, 59, 63, 67); and treating Peaster as an "invisible officer" in front of similar situated employees and others at the company – further undermining Peaster's position as head of security (R. 1, 20-21).

[14] *See also, Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016); *Mosby–Grant v. City of Hagerstown,* 630 F.3d 326, 335 (4th Cir. 2010); *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 798 (10th Cir. 2007).

[15] None of the cases cited by Defendants apply. Two are applying Rule 56 standards: *McKenzie v. Milwaukee Cnty.,* 381 F.3d 619 (7th Cir. 2004) and)*; Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334 (7th Cir. 2002); and all involve petty grievances that do not compare to Peaster's allegations. *See Simon v. Efie's Canteen,* 17 C 3229, 2018 WL 2320936, at *4 (N.D. Ill. May 22, 2018) and both summary judgment cases (*McKenzie* and *Patton*).

TWP-TAB, 2013 WL 3779123, at *4 (S.D. Ind. July 18, 2013) ("Seventh Circuit cases routinely treat harassment and disparate treatment as unique claims with specific requirements.") (citing *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012). The *Doe* court explains that,

> [C]ertain actions serve as a basis for more than one of a given plaintiff's claims, but that does not make the claims themselves duplicative. Of course, regardless of how many legal theories plaintiffs raise, they may not recover twice for the same injury. But that is not a concern at this stage [in reviewing a motion to dismiss] of the proceeding.

*Doe 1*, 335 F.Supp.3d at 1105, citing *Volling v. Antioch Rescue Squad*, 999 F.Supp.2d 991, 1006 (N.D. Ill. 2013) ("[T]he pleading stage is not the time to address a potential double recovery."). Defendants cited cases - *Marshall v. C & S Rail Services, LLC*, 1:19CV986, 2021 WL 1341801, *11 (M.D.N.C. Apr. 9, 2021) and *Williams v. Forest Pres. Dist. of Cook Cnty.*, 09 CV 7810, 2010 WL 3909475 (N.D. Ill. Oct. 1, 2010) – ignore this settled law.

### G. Peaster's Retaliation Claims Are Sufficiently Plead

"To state a claim for retaliation under Title VII or § 1981, a plaintiff must show that (1) [plaintiff] engaged in protected activity, (2) [plaintiff] suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Sumi Cho v. Rosato Perea*, 18 C 8117, 2019 WL 4645419, at *9 (N.D. Ill. Sept. 24, 2019) (internal citations omitted). Section 1981 "forbids *any* retaliatory actions that are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination,' and those retaliatory actions need not be directly 'related to employment or occur in the workplace' except that their harm must have been caused by … employment -related events." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016), quoting *Burl. N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "Complaints about perceived discrimination are protected activity." *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 832 (N.D. Ill. 2021) – and Peaster's

13

comments at the Company town hall convened to discuss Kempczinski's racist text were functionally a complaint about Kempczinski's discriminatory views. (¶¶12-16). Peaster's statements to Company counsel during an interview about a race discrimination case (¶¶39-40), were also protected activity. Both of these conversations were employer-initiated, and both resulted in an African American employee being punished for expressing his viewpoints on race. See *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011) ("The plaintiff need not show that the practice he opposed was in fact a violation of the statute; he may be mistaken in that regard and still claim the protection of the statute … if his opposition [was] based on a good-faith and reasonable belief that he is opposing unlawful conduct.").

The argument that the Company and its CEO don't know what Peaster told their lawyers when they interviewed him in the other racial discrimination case is a fact defense that cannot be accepted as true merely because Defendants make the assertion. Defendants' lawyers were their agents and so they are charged with their lawyers' knowledge; and moreover, as a fact issue, Defendants are ignoring the likely role of Ralls-Morrison to whom the lawyers would have reported, and who is unquestionably alleged to have acted as Kempczinski's agent in his retaliation against Peaster that began after the town-hall meeting.[16] The facts here are distinct from *Narbaiz v. TCF Fin. Corp.*, No. 08 C 17, 2009 WL 1346246, at *2 (N.D. Ill. May 8, 2009) and *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 814 (7th Cir. 2011).

### H. The IIED Claim Is Not Preempted And Is Sufficiently Pled

---

[16] The close proximity between the interview (July 28, 2022) and the meeting where Peaster was informed of his termination (November 7, 2022) is further evidence of a causal connection. See, *e.g.*, *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007).

Peaster has adequately pled facts supporting Defendants' extreme and outrageous conduct, which Defendants themselves admit are "inconsistent with McDonald's values." (R. 17, p. 1).[17] In support of his IIED claim, Peaster alleges that Defendants committed extreme and outrageous conduct by sharply diminishing his ability to do his job successfully, which in turn jeopardized the safety of *everyone* at McDonald's Corporation. (¶¶114-115).

This claim is brought independently of Peaster's Section 1981 claims based on race. The IIED claim is based on Peaster's concern for the safety and security of McDonald's Corporate's personnel and property. (¶7). The increased risks McDonald's was taking in its seal to punish Peaster were outrageous. *Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1076 (N.D. Ill. 2002) (quoting, *inter alia*, the Restatement (Second) of Torts § 46, cmt. d, at 73 (1965)). To impose the risk of a security catastrophe on Peaster's watch foreseeably resulted in Peaster suffering common law IIED independent of his race-based claims. *Cf. Smith v. Chicago Sch. Reform Bd.*, 165 F.3d 1142, 1151 (7th Cir. 1999); and *see Warnell v. Ford Motor Co.*, 48 F. Supp. 2d 1095, 1097–98 (N.D. Ill. 1999) (denying motion to dismiss IIED claim based on preemption by IHRA because "[i]t is premature to speculate whether after discovery is complete the evidence will support the common law claims independently of the civil rights claims.)".[18] The cases cited by Defendants – *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000); *Beard v. City of Chicago*, 299 F. Supp. 2d 872, 874 (N.D. Ill. 2004) - are inapplicable because Peaster's IIED claim is independent of his Section 1981 claims.

---

[17] "The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct by defendant, (2) intent to inflict or knowledge of a high degree of probability that conduct would cause severe emotional distress, and (3) severe emotional distress in fact." *Jimenez v. Thompson Steel Co.*, 264 F. Supp. 2d 693, 696 (N.D. Ill. 2003). Defendants' challenge only the first element.

[18] And see: *Temores v. Cowen*, 289 F. Supp. 2d 996, 1006 (N.D. Ill. 2003) (The IHRA does not bar common law tort claims simply because they are factually related to incidents of sexual harassment, rather the question is whether the common law claim is premised upon legal obligations and prohibitions that exist as a matter of Illinois law only under the Act and have no other independent foundation") (internal citations omitted); *Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1075 (N.D. Ill. 2002) (collecting cases for the same proposition)

## IV. CONCLUSION

Defendants' motion to dismiss Peaster's Complaint should be denied.

Dated: March 10, 2023                          Respectfully submitted,

**PLAINTIFF MICHAEL PEASTER**

By:     */s/ Carmen D. Caruso*

Carmen D. Caruso (# 6189462) – cdc@cdcaruso.com
William B. Whitner (# 6331564) – wbw@cdcaruso.com
CARMEN D. CARUSO LAW FIRM
77 West Washington Street, Ste. 1900
Chicago, IL 60602
T: (312) 626-1160

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on March 10, 2023. Notice of this filing will be sent to these parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    Nigel F. Telman – ntelman@proskauer.com
    Alexandra S. Oxyer – aoxyer@proskauer.com
    PROSKAUER ROSE LLP
    Three First National Plaza
    70 W. Madison St., Ste. 3800
    Chicago, IL 60602

    *Attorneys for Defendants McDonald's Corp. and Kempczinski*

                                  /s/ *Carmen D. Caruso*