## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MICHAEL PEASTER,** | |
| **Plaintiff,** | |
| **vs.** | **Case No. 1:22-cv-07037** |
| **MCDONALD'S CORPORATION, a Delaware corporation, and CHRISTOPHER KEMPCZINSKI,** | **Honorable Lindsay C. Jenkins** |
| **Defendants.** | |

## MCDONALD'S CORPORATION AND CHRISTOPHER KEMPCZINSKI'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants McDonald's Corporation ("McDonald's") and Christopher Kempczinski ("Kempczinski") (together, "Defendants"), by and through the undersigned counsel, hereby submit their reply in support of their motion to dismiss *with prejudice* the claims asserted in Plaintiff Michael Peaster's ("Plaintiff") Complaint (ECF No. 1).

## INTRODUCTION

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (ECF No. 27, the "Response") relies on speculation, conclusory statements, inapplicable case authority, and mischaracterization to try to overcome the fatal pleading deficiencies addressed in Defendants' Motion to Dismiss (ECF No. 17, the "Motion"). The arguments raised in Plaintiff's Response fail to save his claims for a number of reasons:

*First*, Plaintiff has failed to satisfy the "but for" standard necessary to support his Section 1981 claims. His assertion in his Response that *McCauley v. City of Chicago*, 671 F.3d 611, 616

(7th Cir. 2011) – which requires him to present more than just "legal conclusions and conclusory allegations merely reciting the elements of the claim[s] asserted" – is no longer the prevailing law in the Seventh Circuit is simply incorrect. Further, Plaintiff devotes substantial time trying to distinguish and otherwise avoid the devastating impact the *Comcast* and *Arora* opinions[1] have on his ability to avoid immediate dismissal *with prejudice* of his Section 1981 claims. But, a plain reading of the allegations in his Complaint within the context of these two decisions makes clear that dismissal at this stage is appropriate because Plaintiff has alleged multiple discrimination theories and this undermines his ability to argue that his race was the "but for" reason behind the Company's decision to terminate his employment. Finally, Plaintiff's admission in his Complaint to at least one significant performance deficiency effectively prevents him from arguing that his race had to be the "but for" cause for the Company's decision to terminate his employment. *See James v. City of Evanston*, No. 20-CV-00551, 2021 WL 4459508, at *10 (N.D. Ill. Sept. 29, 2021) ("[D]iscriminatory animus cannot be bootstrapped to another independent motivation" in pleading Section 1981 claims.).

*Second*, the majority of the actions Plaintiff attributes to Defendants in the Complaint do not amount to actionable adverse employment actions under controlling law. The authority Plaintiff relies upon in his Response to rebut this fact has no reasonable application to this case. *See Kenese v. Catholic Charities of Archdiocese of Chicago*, 18-CV-08272, 2021 WL 1192555, at *4 (N.D. Ill. Mar. 30, 2021) (holding only that a termination of employment was an adverse employment action).

*Third*, Plaintiff's allegations supporting his hostile work environment claims fall far below the severe or pervasive standard required to show that "the conditions of [his] employment" were

---

[1] *Arora v. Nav Consulting, Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022); *Comcast Corp. v. National Association of African American-Owned Media*, 140 S. Ct. 1009 (2020).

sufficiently "altered." *See Holmes v. Housing Authority of Joliet*, No. 14-c-3132, 2015 WL 1826676, at *6 (N.D. Ill. Apr. 20, 2015) (finding that comments to the plaintiff calling her "pretty baby" and "beautiful" were not severe or pervasive)His argument that these claims are permitted to be duplicative of his disparate impact claims is antithetical to established standards in the Northern District of Illinois. *See Williams v. Forest Pres. Dist. of Cook Cty.*, No. 09 CV 7810, 2010 WL 3909475, at *2 (N.D. Ill. Oct. 1, 2010) (dismissing Plaintiff's hostile work environment claim because it was duplicative of her Title VII discrimination claim).

*Fourth*, while Plaintiff continues to believe that (i) the statement he allegedly made at the Town Hall meeting and (ii) the internal "interview" conducted by the Company's lawyers to determine his knowledge of facts surrounding a pending lawsuit amounted to opposition to race discrimination in and of themselves, prevailing case law makes clear that these actions do not amount to speech protected under Section 1981. *O'Leary v. Accretive Health, Inc*., 657 F.3d 625, 631 (7th Cir. 2011) (a plaintiff must show that he "took some step in opposition to a form of discrimination that the statute prohibits."). As such, his retaliation claim is subject to immediate dismissal.

*Fifth*, the argument Plaintiff presents in his Response to support his intentional infliction of emotional distress claims actually establishes that these claims are in fact "inextricably linked" to his claims alleging civil rights violations and are therefore preempted by the Illinois Human Rights Act ("IHRA"). *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) ("IHRA preempts all state law claims that seek redress for conduct constituting a civil rights violation."). Furthermore, Plaintiff fails to establish that the Company's alleged conduct was sufficiently "extreme and outrageous" to support an infliction of emotional distress claim. *See Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) ("Under Illinois law, a plaintiff may recover damages

for intentional infliction of emotional distress only if []he establishes that…the defendant's conduct was truly extreme and outrageous.").

*Finally*, consistent with the allegations contained in the Complaint, Plaintiff's Response relies entirely on mere speculation to establish that Kempczinski (i) had a *specific* intent to discriminate and/or retaliate against him on the basis of his race; or (ii) participated in any other constitutional deprivation of Plaintiff's rights, either of which is required to maintain claims against Kempczinski individually. *See Holmes v. Hous. Auth. of Joliet*, No. 14-C-3132, 2014 WL 6564949, at *6 (N.D. Ill. Nov. 20, 2014) ("[A]n individual defendant can be liable 'only if the supervisor causes or participates in a constitutional deprivation'"). Instead, Plaintiff relies only on an unfounded and offensive characterization of the Executive Vice President and General Counsel of McDonald's Corporation – an African American woman with a highly distinguished legal career – as being Mr. Kempczinski's "minion" allegedly incapable of deciding whether Plaintiff's performance met her legitimate expectations. Besides being unnecessarily disrespectful in the first instance, Plaintiff fails to support this argument with a single allegation in the Complaint.

## ARGUMENT

### I.    Plaintiff Has Failed to Meet The "But For" Standard Necessary to Establish His Disparate Treatment And Retaliation Claims.

As established in Defendants' Motion, Plaintiff has failed to meet the requisite "but for" standard in his pleading with respect to his disparate treatment and retaliation claims. (ECF No. 17 at 3-7). In response, Plaintiff contends that he has sufficiently pled that "race and race alone was the but for cause" of the alleged conduct included in Plaintiff's Complaint. (ECF No. 27 at 7). Plaintiff's contention misses the mark for several reasons.

First, Plaintiff tries to avoid the long-held principle that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth" (*McCauley,* 671 F.3d at 616) by asserting that it is no longer good law. (ECF No. 27 at 6). The

4

Seventh Circuit has never overturned the *McCauley* decision and cited to *McCauley* as recently as late last year for this very principle. *See Kap Holdings, LLC v. Mar-Cone Appliance Parts Co*., 55 F.4th 517, 523 (7th Cir. 2022) ("When examining a motion to dismiss, we accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff….'[B]ut legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth.'") (quoting *McCauley*).

Moreover, the decision cited by Plaintiff to support his argument, *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 Fed. Appx. 609 (7th Cir. 2013), actually *emphasizes* the deficiencies in Plaintiff's pleading. In *Petrovic*, the plaintiff specifically identified in his complaint identically-situated individuals outside of his protected class who had been treated more favorably than he in a particular incident which the court found to be sufficient to support his Section 1981 claim. *Id.* at 611. These allegations are markedly different from Plaintiff's, who has only lodged conclusory allegations that unnamed "White Officers" were treated more favorably than he was. Critically missing from the Complaint and the Response are any specific examples or allegations upon which a reasonable fact finder could conclude that non-African American Officers were treated better than Plaintiff under similar circumstances. (*See* ECF No. 1 *generally*).

Second, while Plaintiff tries in his Response to avoid the devastating impact of *Comcast* and *Arora*, he has not (and cannot) avoid *Arora's* clear confirmation that "[a]s courts in this Circuit have interpreted *Comcast*, a plaintiff cannot allege **multiple discrimination theories** as the 'but for' cause for a Section 1981 violation…" and "[p]ut differently, a plaintiff cannot survive a motion to dismiss upon a showing that racial discrimination was one factor among many in a defendant's decision." *Arora*, 2022 WL 7426211, at *2 (quoting *Piccioli v. Plumbers Welfare Fund Local 130, U.A*., No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020)). Plaintiff's attempt to rehabilitate the Complaint by combining all of his alleged "but for" motives together

under the umbrella of "race" in the Response fails and provides no opportunity for him to avoid dismissal under *Arora*.[2]

Third, Plaintiff cannot now avoid the fact that he admitted in his Complaint that: (i) his role at McDonald's Corp. was "*the* Officer responsible for [CEO] Kempczinski's personal security"; and (ii) at least one major security incident occurred under his supervision during a trip to New York. (ECF No. 1 at ¶¶ 18, 57-59). It is impossible to square Plaintiff's argument that "but for" his race *and* his alleged comments at the Town Hall (which, again, were not protected under the law) his employment would not have been terminated while at the same time admitting to at least one significant performance deficiency. To put a finer point on it, the fact that Plaintiff admits to even one major performance lapse undermines any argument that his employment would not have been terminated "but for" his race or alleged protected activity. *See James*, 2021 WL 4459508, at *10 ("[D]iscriminatory animus cannot be bootstrapped to another independent motivation" in pleading Section 1981 claims.). And, reading the Complaint as a whole – even taking all of the allegations as true – a reasonable fact finder simply could not conclude that Plaintiff had any action taken against him *solely* because of his race. Accordingly, his disparate treatment and retaliation claims must be dismissed.

## II. Other Than the Decision To Terminate His Employment, Plaintiff Has Failed to Establish That He Was Subjected to Actionable Adverse Employment Actions.

The following alleged actions are not adverse actions under the law for purposes of Plaintiff's disparate treatment or retaliation claims:

- Kempczinski allegedly "intentionally avoided" Plaintiff, canceled a meeting with Plaintiff twice, and failed to congratulate Plaintiff on his promotion;

---

[2] Plaintiff also points to *Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 676 (N. D. Ill. 2022), to support his argument. However, the *Williams* court specifically declined to address the issue raised in the Motion. *Id.* at 681 ("The parties' positions on *Comcast* and *Bostock* present an interesting and difficult question—whether *Bostock's* multiple but-for causes analysis can apply in the Section 1981 context…The Court, however, need not untangle the *Comcast/Bostock* knot here because the Court finds that, even under *Comcast*, Plaintiffs have alleged the requisite but-for causation.").

- Ralls-Morrison refused to approve Plaintiff's request to hire more security personnel, fill a certain role on his team, or confirm that he could fly on the corporate jet, which "relegated [him] to fly commercial"; and

- Kempczinski's and Ralls-Morrison's criticisms of Plaintiff's performance.

(ECF No. 1 at ¶¶ 30, 46, 50, 59, 84). This is because none of these alleged actions caused Plaintiff actual injury, *see Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009) ("Federal law protects an employee only from retaliation that produces an injury, and, therefore, an employer's retaliatory conduct is actionable only if it would be materially adverse to a reasonable employee."), and Plaintiff's Response points to nothing in the Complaint to suggest otherwise.

Plaintiff's reliance on *Kenese v. Catholic Charities of Archdiocese of Chicago*, No. 18-CV-08272, 2021 WL 1192555, at *4 (N.D. Ill. Mar. 30, 2021) is misplaced. (ECF No. 27 at 10). *Kenese* examined only whether a termination of employment was an adverse action and whether the plaintiff was subjected to a hostile work environment, which is inapplicable to Defendants' argument. *Kenese*, 2021 WL 1192555, at *4. Nothing in *Kenese* discusses whether the above issues, which do not include the termination of Plaintiff's employment, should be considered adverse actions. As noted in the Motion and below, they certainly do not rise to the level of a hostile work environment and *Kenese* does not support such a contention. *Id.* (finding that the plaintiff's allegations sufficiently stated that he was subject to a hostile work environment where, among other issues, his supervisor hid his files and told him that she could not understand his accent). Further, while Plaintiff states that this case is distinguishable from *Stephens*, he presents the court with no authority to support such a contention. (ECF No. 27 at 10). In sum, any disparate treatment or retaliation claim based on allegations other than the termination of his employment must be dismissed *with prejudice* for this reason alone.

### III.    Plaintiff Cannot Establish That His Allegations Amount To A Hostile Work Environment And Does Not Justify His Duplicative Claims.

Plaintiff's Response spends little time explaining how his allegations amount to severe or pervasive conduct based on race sufficient to sustain his hostile work environment claims and states only in conclusory fashion that the alleged conduct was meant to "demean, unfairly criticize, and humiliate him." (ECF No. 27 at 11). However, the actual underlying factual allegations, and not these speculative characterizations, fall substantially short of the pleading standard for such claims.

With respect to the severe or pervasive element of the hostile work environment standard, "conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an abusive relationship." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). Plaintiff's Response does not explain how the allegations in his Complaint rise to the level of situations that courts in this Circuit have found to be severe or pervasive, except for Plaintiff's self-serving statement that he "clearly perceived the environment to be hostile." (ECF No. 27 at 12); *see Huri*, 804 F.3d at 833 (allegations of screaming, prayer circles, social shunning, and implicit criticism of religious beliefs plausibly alleged a hostile work environment); *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (allegations that coworkers used offensive slurs, stole plaintiff's food, and physically threatened him over a two-year period, as well as allegations that he routinely complained to his supervisors of mistreatment and that the harassment was not addressed were sufficient to survive motion to dismiss).

Instead, Plaintiff's allegations include only: (i) his assertion that Kempczinski treated Peaster like he was "an invisible officer" (ECF No. 1 at ¶ 20); (ii) his assertion that he was not allowed to manage his department simply because his requests to increase his department's budget, fill a certain open position, and recruit his own replacement were rejected by the Company (*id.* at ¶¶ 23-25; 32; 33; 93); (iii) his assertion that he was not allowed "to meet with the CEO, [or] fly

on the Company jet" (*id.* at ¶ 93b); (iv) his assertion that Kempczinski did not recognize or congratulate Plaintiff on his promotion on one occasion on or about June 29, 2022 (*id.* at ¶ 30); (v) his belief that he was subjected to "false criticism" concerning his performance (*id.* at ¶ 93e); and (vi) the termination of his employment. (*id.* at ¶ 93f.) Allegations similar to these have been found insufficient by courts in this District to sustain a hostile work environment claim. *See, e.g., Winters v. Hamos*, No. 16-CV-10777, 2018 WL 3458266, at *4 (N.D. Ill. July 18, 2018) ("Nevertheless, the Court agrees that Winters fails to allege a hostile work environment claim. Winters alleges that the Defendant denied him training, failed to give him performance reviews or gave him baseless poor reviews, gave him an excessive workload, denied his Flex Time, and suspended him for seven days.[the allegations] do not constitute harassment so severe or pervasive to alter the conditions of employment and create an abusive working environment.").

Further, Plaintiff's argument that he is not attempting "double recovery" and that his claims are permitted to be duplicative ignores established precedent for considering duplicative claims in this District. Plaintiff's cited authority also misses the mark on this argument. To be clear, Defendants are not arguing that, in the abstract, disparate treatment and hostile work environment claims cannot be brought as distinct causes of action, which cases cited by Plaintiff, such as *Passananti*, support. *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012). Instead, Defendants are legitimately asserting that dismissal is appropriate because Plaintiff has alleged the same operative facts to support both his disparate treatment and hostile work environment claims, making them duplicative and subject to dismissal. *See Williams,* 2010 WL 3909475, at *2 (dismissing Plaintiff's hostile work environment claim because it was duplicative of her Title VII discrimination claim); *Freedom Mortg. Corp. v. Burnham Mortg., Inc.,* 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010) ("The allegations in Count XXV are similar to those in Counts VIII and XX. 'It is well-settled that duplicative counts in a complaint may be properly dismissed.'"); *DeGeer v.*

9

*Gillis*, 707 F. Supp. 2d 784, 795 2010 WL 1609914, at *8 (N.D. Ill. Apr. 21, 2010) ("True, the allegations in Counts II and IV are not identical. The relevant inquiry, however, is not whether the allegations are the same, but whether the claims are based on the same operative facts and the same injury.").

In light of these deficiencies, Plaintiff's hostile work environment claims under Section 1981 should be dismissed *with prejudice.*

**IV.    Plaintiff Has Failed to Establish That He Engaged In Protected Activity.**

A review of the Complaint makes clear that Plaintiff has failed to engage in *any* activity in which he specifically opposed a form of discrimination prohibited by Section 1981 (*i.e.*, discrimination on the basis of race as to the "mak[ing] and enforc[ing of] contracts." 42 U.S.C. § 1981(a)) such that his activity would be protected by the statute.  Plaintiff's Response makes a thin argument that he engaged in protected activity because he made a complaint about "perceived discrimination," (ECF No. 27 at 13-14), but this argument mischaracterizes Plaintiff's own allegations.  Plaintiff's own summary of his alleged remarks to Defendant Kempczinski during the Town Hall does not reflect any advocacy against unlawful discrimination under Section 1981 and, in fact, does not even mention race or discrimination. (ECF No. 1 at ¶ 14).  Further, with respect to his "interview," Plaintiff alleges only that he "candidly answered each question posed by the Company's lawyers." (ECF No. 1 at ¶ 39).  He *does not* allege that he engaged in any advocacy or made any reports of discrimination during the "interview."  As established in Defendants' moving brief, activity protected under Section 1981 must report or advocate against *discrimination that is unlawful under Section 1981*.  (ECF No. 17 at 10); *see Narbaiz v. TCF Fin. Corp.*, No. 08 C 17, 2009 WL 1346246, at *2 (N.D. Ill. May 8, 2009) ("Although 'a report of discrimination to a supervisor may be statutorily protected activity…the report must include a complaint

of…discrimination or sufficient facts to raise that inference.").  Nothing Plaintiff claims that he said rises to this level.

Plaintiff goes on to argue in the Response that his failure to allege that any of the purported decisionmakers for the adverse actions identified in his Complaint – including Ralls-Morrison or Kempczinski – had any knowledge of this interview or Plaintiff's statements therein is a fact issue that should be addressed later in the litigation.  (ECF No. 27 at 15).  This argument is nothing but a thinly veiled attempt to distance himself from his pleading obligations.  Pleading requirements mandate that Plaintiff draw at least some connection between alleged protected statements made during the interview – which he concedes in his Response were allegedly made to individuals who were not Ralls-Morrison or Kempczinski – to the alleged adverse action in order to support his retaliation claim.  *See Silver v. Townstone Fin., Inc*., No. 14-CV-1938, 2015 WL 1259507, at *3 (N.D. Ill. Mar. 17, 2015) ("Nothing alleged in the complaint suggests that any of the Defendants had knowledge of his alleged grievances.  Silver has failed to allege how his termination had anything to do with his complaints and thus fails to allege the requisite causal connection…Silver's FLSA retaliation claim fails and is dismissed.").  These deficiencies cannot be cured by repleading in light of the Complaint's allegations.  Therefore, Plaintiff's retaliation claims must be dismissed *with prejudice*.

V.    **Plaintiff's Intentional Infliction Of Emotional Distress Claims Fail As A Matter of Law Because They Are Preempted And Insufficiently Pled.**

Plaintiff's intentional infliction of emotional distress ("IIED") claims are "inextricably linked" to his claims alleging civil rights violations and are therefore preempted by the IHRA. *Beard v. City of Chicago*, 299 F. Supp. 2d 872, 874 (N.D. Ill. 2004).  Plaintiff's Response attempts to distinguish the allegations behind his IIED claims by stating that the claims are based on "Peaster's concern for the safety and security of McDonald's Corporate's personnel and property…The increased risks McDonald's was taking in its seal *(sic)* to punish Peaster were

outrageous." (ECF No. 27 at 16). There is no daylight whatsoever between Plaintiff's allegations supporting his civil rights claims – which are based on his view that McDonald's wrongfully punished him – and his IIED claims, which he admits are based again on McDonald's "seal *(sic)* to punish [him]." The Seventh Circuit has explicitly held that a claim of intentional infliction of emotional distress is preempted by the IHRA where, like here, "the core of [the plaintiff's] theory" is that the plaintiff was a victim of a civil rights violation. *Smith v. Chicago Sch. Reform Bd.,* 165 F.3d 1142, 1151 (7th Cir. 1999).

Further, Plaintiff's Response fails to establish that his IIED claims, even if not preempted, are sufficiently pled. (ECF No. 27 at 16). Plaintiff argues that his claims are sufficient because he alleges that "Defendants committed extreme and outrageous conduct by sharply diminishing his ability to do his job successfully." (ECF No. 27 at 16). This falls woefully short of the standard for such claims. As discussed in Defendants' Motion, "Illinois courts 'often hesitate to find a claim for [IIED] in employment situations' based on concern that 'if everyday job stresses resulting from discipline, personality conflicts, job transfers, or even terminations could give rise to a cause of action for [IIED], nearly every employee would have a cause of action.'" *Metro. All. of Police v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 2020 WL 814870, at *5 (N. D. Ill. Feb. 19, 2020) ("Illinois courts have found behavior in the workplace to rise to the level of extreme and outrageous conduct only when the behavior is truly egregious.") (citation omitted); *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154 (Ill. App. 1999) ("[I]n the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress."). The allegations that Illinois courts find sufficient to support IIED claims simply are not present in Plaintiff's Complaint and, as such, his claims should be dismissed *with prejudice.*

## VI.     Plaintiff's Allegations Against Kempczinski Are Based Only On Speculation And Must Be Dismissed.

Plaintiff relies heavily on conclusory allegations and speculation to support his claims against Kempczinski.  To adequately plead a race discrimination claim under 42 U.S.C. § 1981(a)(1) against an individual, however, Plaintiff must "aver that the employer instituted a (*specified*) adverse employment action against the plaintiff on the basis of [his] race." *Trent v. D.T. Chicagoland Express, Inc.*, No. 18-C-5090, 2019 WL 498943, at *2 (N.D. Ill. Feb. 7, 2019) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)) (emphasis added). Plaintiff has not met this burden.

While Plaintiff insists in his Response that Kempczinski participated in some way in the decision to terminate his employment, the Complaint is devoid of *any* factual allegation that connects Kempczinski to the decision.  (*See* ECF No. 1 *generally*).  Plaintiff attempts to distract from this deficiency by alleging in his Response that Kempczinski orchestrated a campaign against Plaintiff, including involving Ralls-Morrison, but all of Plaintiff's conspiratorial conjecture cannot make up for his substantial pleading deficiencies.  (ECF No. 27 at 11-12).

Plaintiff's claims against Kempczinski also fail because no trier of fact could conclude that Kempczinski intended to discriminate or retaliate against Plaintiff or otherwise deprive Plaintiff of his constitutional rights based on the allegations as presented in the Complaint, and Plaintiff's own cited authority supports such a conclusion.  *See Holmes*, 2014 WL 6564949, at *6 ("[T]he Court cannot find any facts about Morris or Simelton engaging in racially discriminatory conduct…Even if her race discrimination allegations are based on disparate treatment, Holmes does not make a single allegation that Morris or Simelton singled her or other African American employees out.  Besides brief conclusory statements that they violated her rights, Holmes fails to show what Morris and Simelton did or said to her when they allegedly discriminated against her."); *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 901 (N.D. Ill. 2011) (allowing Section 1981

13

claims against supervisors to proceed because the plaintiff could specifically allege that they were "involved in the decision-making process for every disciplinary action against an Aviation Police Officer.").

Accordingly, Plaintiffs' Section 1981 claims against Kempczinski must be dismissed *with prejudice*.

## CONCLUSION

For all of the reasons discussed herein and in their Motion, Defendants respectfully request that the Court dismiss Plaintiff's claims *with prejudice*.

Dated: March 24, 2023

<div style="margin-left:40%">

Respectfully submitted,

By:    /s/*Nigel F. Telman*

Nigel F. Telman
Alexandra S. Oxyer
Proskauer Rose LLP
70 W Madison, Suite 3800
Chicago, IL 60602-4342
Phone: 312-962-3548
Fax: 312-962-3551
ntelman@proskauer.com
aoxyer@proskauer.com

*Attorneys for Defendants McDonald's Corp. and Christopher Kempczinski*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 24, 2023, the foregoing document was filed with

the Clerk of the Court and notice was sent via ECF notification to:

Carmen D. Caruso
William B. Whitner
CARMEN D. CARUSO LAW FIRM
77 West Washington Street
Suite 1900
Chicago, Illinois  60602
cdc@cdcaruso.com
wbw@cdcaruso.com


*/s/ Nigel F. Telman*
Nigel F. Telman