IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PEASTER<br><br>Plaintiff,<br><br>v.<br><br>McDONALD'S CORPORATION, a Delaware corporation, and CHRISTOPHER KEMPCZINSKI<br><br>Defendants. | ) | Case No. 1:22-cv-07037<br><br>Honorable Lindsay C. Jenkins<br><br>Magistrate Judge Heather K. McShain |

**DEFENDANT MCDONALD'S CORPORATION'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL ARGUMENT ..... 7

A. PLAINTIFF'S DISPARATE TREATMENT CLAIM FAILS ..... 7

1. Peaster Did Not Meet McDonald's Legitimate Performance Expectations ..... 8

2. Peaster's Termination Constitutes the Only Adverse Employment Action at Issue ..... 9

3. Peaster Has Not Identified Any Similarly Situated Comparators Who Were Treated More Favorably ..... 12

4. McDonald's had Legitimate, Nondiscriminatory Reasons for Terminating Peaster's Employment ..... 12

5. Peaster Cannot Establish "But For" Causation ..... 14

6. The Undisputed Facts Compel an Inference that McDonald's Did Not Act With Discriminatory Intent ..... 14

B. PLAINTIFF'S RETALIATION CLAIM FAILS ..... 15

1. Peaster Cannot Establish a *Prima Facie* Case of Retaliation For Several Reasons ..... 15

2. Peaster Cannot Establish that McDonald's Legitimate Non-Retaliatory Reasons for the Alleged Adverse Employment Actions were Pretextual ..... 17

3. McDonald's Offer of Enhanced Retirement Benefits Cannot Support a Retaliation Claim ..... 17

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abebe v. Health & Hosp. Corp. of Marion Cnty.*,
35 F.4th 601 (7th Cir. 2022) ....................15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................7

*Arevalo-Carrasco v. Middleby Corp.*,
851 F. App'x 628 (7th Cir. 2021) ....................14

*Barricks v. Eli Lilly & Co.*,
481 F.3d 556 (7th Cir. 2007) ....................14

*Bhat v. Accenture LLP*,
473 F. App'x 504 (7th Cir. 2012) ....................16

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020)....................8

*Dear v. Nicholson*,
No. 07CV2366, 2008 WL 4066098 (N.D. Ill. Aug. 27, 2008), *aff'd*, 578 F.3d 605 (7th Cir. 2009)....................13

*Dear v. Shinseki*,
578 F.3d 605 (7th Cir. 2009) ....................8

*Dranchak v. Akzo Am., Inc.*,
No. 92-CV-1295, 1995 WL 470245 (N.D. Ill. Aug. 7, 1995), *aff'd*, 88 F.3d 457 (7th Cir. 1996)....................16

*Everroad v. Scott Truck Sys., Inc.*,
604 F.3d 471 (7th Cir. 2010) ....................8

*Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*,
860 F.3d 494 (7th Cir. 2017) ....................15, 16

*Gates v. Caterpillar, Inc.*,
513 F.3d 680 (7th Cir. 2008) ....................8

*Golla v. Off. of Chief Judge*,
875 F.3d 404 (7th Cir. 2017) ....................7

*Hobbs v. City of Chicago*,
573 F.3d 454 (7th Cir. 2009) ....................7

*Johnson v. Advoc. Health & Hosps. Corp.*,
892 F.3d 887 (7th Cir. 2018) ....................7, 8

*Johnson-Carter v. B.D.O. Seidman, LLP*,
169 F. Supp. 2d 924 (N.D. Ill. 2001) ....................9

*Jones v. A.W. Holdings LLC*,
484 F. App'x 44 (7th Cir. 2012) ....................16

*Jones v. Leavitt*,
No. 02-cv-4874, 2005 WL 946885 (N.D. Ill. Mar. 18, 2005) ....................9

*Madlock v. WEC Energy Grp., Inc.*,
885 F.3d 465 (7th Cir. 2018) ....................15

*Medearis v. CVS Pharmacy*,
92 F. Supp. 3d 1294 (N.D. Ga. 2015) ....................9

*Miller v. Batesville Casket Co.*,
No. 02-cv-5612, 2007 WL 2120371 (E.D.N.Y. July 23, 2007), *aff'd in part, vacated in part,* 312 F. App'x 404 (2d Cir. 2009) ....................9

*Moultrie v. Penn Aluminum Int'l, LLC*,
766 F.3d 747 (7th Cir. 2014) ....................8

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ....................9

*Naik v. Boehringer Ingelheim Pharms., Inc.*,
627 F.3d 596 (7th Cir. 2010) ....................12

*Narbaiz v. TCF Fin. Corp.*,
No. 08-CV-17, 2009 WL 1346246 (N.D. Ill. May 8, 2009) ....................15, 16

*Onofrei v. Gen. Sec. Servs. Corp.*,
No. 04CV5560, 2005 WL 3312599 (N.D. Ill. Dec. 5, 2005) ....................13

*Rooks v. Girl Scouts of Chi.*,
No. 95CV206, 1995 WL 562126 (N.D. Ill. Sept. 21, 1995), *aff'd*, 95 F.3d 1154 (7th Cir. 1996) ....................15

*Singmuongthong v. Bowen*,
77 F.4th 503 (7th Cir. 2023) ....................14

*Stephens v. Erickson*,
569 F.3d 779 (7th Cir. 2009) ....................15

*Stuczynski v. Scotts Co.*,
No. 21-CV-00059, 2024 WL 1376210 (N.D. Ill. Mar. 30, 2024)........................................14

*Thomas v. Chi. Teachers' Pension Fund*,
No. 21-cv-01844, 2025 WL 815614 (N.D. Ill. Mar. 13, 2025) ..............................................8

*Young v. Ford Motor Co.*,
No. 99-cv-0255, 2000 WL 562475 (N.D. Ill. May 8, 2000)....................................................8

**STATUTES AND RULES**

42 U.S.C. § 1981..........................................................................................................1, 7, 8, 15

FED. R. CIV. P. 56...................................................................................................................7

## I. INTRODUCTION

In January 2022, Desiree Ralls-Morrison ("Ralls-Morrison"), Executive Vice President and Global Chief Legal Officer of McDonald's Corporation ("McDonald's" or the "Company") promoted Plaintiff Michael Peaster ("Peaster") to Vice President Global Chief Safety, Security and Intelligence Officer (hereinafter, "CSO") of McDonald's. There is no dispute that, as CSO, Peaster was responsible for, among other things, protecting the Company's executives, including its CEO, Chris Kempczinski ("Kempczinski"). In 2022, several incidents occurred that led Ralls-Morrison to lose confidence in Peaster's ability to effectively manage and ensure the safety and security of McDonald's executives to the standard required by the Company. These incidents included at least two significant lapses in security. [REDACTED] Ralls-Morrison eventually lost confidence in Peaster's ability to effectively manage McDonald's security team and, specifically, to provide security to McDonald's executives, including the CEO, at the level required by the Company. Ralls-Morrison made the decision to terminate Peaster's employment in November 2022.

Peaster now brings discrimination and retaliation claims[1] pursuant to 42 U.S.C. § 1981 ("Section 1981") against McDonald's and Kempczinski. Peaster's claims are baseless and his

[1] All other claims asserted in the Complaint have been dismissed. (ECF Nos. 46, 58).

arguments are not the product of straight-line reasonable inference, only self-serving speculation. Most of the conduct about which Peaster complains – *e.g.*, that Kempczinski purportedly ignored him in the hallway – amount to petty grievances that are not actionable under the law. Regardless, there is no evidence that Ralls-Morrison – the same person who decided to promote Peaster – made the decision to terminate his employment ten months later because of his race. Nor is there evidence that she did so in retaliation for comments Peaster made at a McDonald's all employee Town Hall meeting in November 2021 – a year before his employment was terminated – that Plaintiff asserts were critical of Kempczinski, notwithstanding the fact that the transcript of the meeting shows his comments were in fact benign. Other than Peaster's speculation, there is no evidence in the record that creates a question of fact as to whether (i) Ralls-Morrison made the decision to terminate Peaster's employment because she lost confidence in his ability to protect McDonald's executives at the standard required by the Company – *which she did*; and (ii) Kempczinski directed Ralls-Morrison to terminate Plaintiff's employment in retaliation for Plaintiff allegedly criticizing Kempczinski a year prior at a Town Hall meeting – *which Kempczinski did not*. Summary judgment in McDonald's favor is appropriate on this record.

## II.    FACTUAL BACKGROUND

Effective January 31, 2022, Peaster was promoted to Vice President, Global Chief Safety, Security and Intelligence of McDonald's. (SF ¶ 7). In that role, Peaster was expected to take on enhanced global responsibilities and be personally involved in and responsible for global travel and security of McDonald's executives. (SF ¶ 8). Peaster oversaw McDonald's Global Security, Safety, and Intelligence Department ("GSSI") and had primary responsibility for protecting Kempczinski. (SF ¶¶ 7-9). He held that role until his employment was terminated on November 7, 2022. (SF ¶¶ 2, 7, 84). Ralls-Morrison made the decisions to both promote Peaster and to

terminate his employment.  (SF ¶¶ 7, 84).  Both Peaster and Ralls-Morrison are African American.

(SF ¶ 84; Compl. ¶ 1, ECF No. 1).







## III. LEGAL ARGUMENT[3]

### A. PLAINTIFF'S DISPARATE TREATMENT CLAIM FAILS

Peaster asserts a claim for disparate treatment in violation of Section 1981 against Defendants based largely on the termination of his employment.

Courts in the Seventh Circuit reviewing race discrimination claims under Section 1981 evaluate whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the . . . adverse employment action." *Golla v. Off. of Chief Judge,* 875 F.3d 404, 407 (7th Cir. 2017) (alteration in original) (citation omitted).[4] Courts often utilize the *McDonnell Douglas* framework for evaluating discrimination claims. *Johnson v. Advoc. Health & Hosps.*

[3] Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment" if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Peaster must set forth specific admissible facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] Courts look to Title VII authority to analyze cases under Section 1981 because both require plaintiff to prove the same *prima facie* elements. *See Hobbs v. City of Chicago*, 573 F.3d 454, 460 n.1 (7th Cir. 2009).

*Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (the well-known *McDonnell Douglas* framework remains an efficient way to organize, present, and assess evidence in discrimination cases).[5]

Peaster must "ultimately prove that, ***but for*** race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added). In other words, Section 1981 claims are subject to a heightened but-for causation standard rather than another causation standard. *See id.*

1. Peaster Did Not Meet McDonald's Legitimate Performance Expectations

Peaster cannot establish a *prima facie* case of discrimination because he failed to meet McDonald's legitimate performance expectations. This inquiry focuses on whether the employee "was performing adequately at the time of the adverse employment action," *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009), and mandates looking at the employee's job performance through the eyes of his supervisors at the time of his termination. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008).

Here, for the reasons set forth in Section III.A.4,[6] Peaster cannot meet his burden of establishing that he was meeting McDonald's legitimate performance expectations at the time his employment was terminated. *Thomas v. Chi. Teachers' Pension Fund*, No. 21-cv-01844, 2025 WL 815614, at *5 (N.D. Ill. Mar. 13, 2025) (granting summary judgment on race discrimination

[5] Applying the *McDonnell Douglas* framework to Peaster's disparate treatment claims, Peaster must show (1) he was a member of a protected class; (2) he met McDonald's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated non-African American individuals were treated more favorably. *Id.* at 894-95; *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 752-53 (7th Cir. 2014). If Peaster makes a *prima facie* case of discrimination, the burden shifts to McDonald's to articulate a legitimate, non-discriminatory reason for the adverse employment action. Peaster must then demonstrate that the reasons presented are pre-textual and that ultimately, McDonald's actions were based on impermissible, discriminatory motives. *Young v. Ford Motor Co.*, No. 99-cv-0255, 2000 WL 562475, at *4 (N.D. Ill. May 8, 2000).

[6] Where "the issue of satisfactory performance and the question of pretext overlap" because the employee's performance is the reason for the adverse action, the court "may skip the analysis of the *prima facie* case and proceed directly to the evaluation of pretext." *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010).

and retaliation claims where plaintiff failed to offer evidence that would allow a factfinder to conclude that plaintiff's job performance met defendant's legitimate expectations).

2. Peaster's Termination Constitutes the Only Adverse Employment Action at Issue

Aside from the termination of his employment, the other slights that Peaster complains about do not rise to the level of an adverse employment action. An adverse employment action must be tangible such that it constitutes "some harm respecting an identifiable term or condition of employment" that leaves the plaintiff "worse off." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024).

Here, Peaster alleges that: (1) he was not permitted to fly on McDonald's corporate jet on one trip; (2) Kempczinski allegedly treated him as "invisible," by ignoring him in the hallway, refusing to meet with him, and not acknowledging him during an Officer-level meeting; and (3) Peaster's budgeting and backfilling requests were allegedly denied. None of these complaints rise to the level of an adverse employment action because they do not constitute a tangible harm or a change to any term or condition of Peaster's employment. *See Johnson-Carter v. B.D.O. Seidman, LLP*, 169 F. Supp. 2d 924, 943 (N.D. Ill. 2001) (allegations that supervisors ignored plaintiff does not constitute an adverse employment action); *Miller v. Batesville Casket Co.*, No. 02-cv-5612, 2007 WL 2120371, at *7 (E.D.N.Y. July 23, 2007) (denial of use of corporate jet was not an adverse employment action), *aff'd in part, vacated in part,* 312 F. App'x 404 (2d Cir. 2009); *Jones v. Leavitt*, No. 02-cv-4874, 2005 WL 946885, at *6 (N.D. Ill. Mar. 18, 2005) (imposition of hiring restrictions and severe travel budget cuts on plaintiff was not an adverse employment action where plaintiff presented no evidence that her duties, compensation, or benefits changed as a result).[7]

[7] *Medearis v. CVS Pharmacy*, 92 F. Supp. 3d 1294, 1311–12 (N.D. Ga. 2015) (allegations that budget was reduced and store performance suffered as a result was not an adverse employment action; noting that such claims "strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities").

Moreover, each of these complaints is easily explained by legitimate, non-discriminatory reasons. First, the decision regarding which employees fly on the corporate jet is not made by Ralls-Morrison or even Kempczinski, [REDACTED] And, on the single international trip that Peaster claims he was not selected for a seat on the jet, Peaster admits he only submitted his request to Ralls-Morrison despite knowing that she was not responsible for deciding who would be given a seat on the corporate jet for any particular trip. (SF ¶ 64).

Second, concerning Peaster's allegations that Kempczinski purposely rescheduled and then cancelled a meeting with Peaster on one occasion in retaliation for comments Peaster made approximately eight months earlier, Plaintiff himself admits that he does not know why the meeting with Kempczinski was canceled. (SF ¶¶ 11-14). As Ralls-Morrison testified, Ralls-Morrison informed Kempczinski's secretary that she could cancel the proposed meeting between Peaster and Kempczinski and that Ralls-Morrison would meet with Peaster and provide any feedback and direction to Peaster. (SF ¶¶ 12-13). Kempczinski simply accepted Ralls-Morrison's offer to take the meeting in his stead (SF ¶ 13), and there is no evidence in the record to the contrary. This was not unusual. Peaster himself admits that he worked directly with Ralls-Morrison with regards to fulfilling his responsibilities for the protection of Kempczinski. (Compl. ¶ 10). [REDACTED]

Moreover, there are hundreds of Officer-level employees, like Peaster, at McDonald's. (SF ¶ 62). [REDACTED]

[redacted] Likewise, to the extent Peaster claims that Kempczinski "ignored" him in the hallways at McDonald's, or otherwise treated him as an "invisible Officer," the record is undisputed that there are thousands of employees who work at McDonald's headquarters, Kempczinski maintains a busy schedule and may not always have time to stop to talk to employees in the hallway, and Kempczinski saw Peaster "very infrequently." (SF ¶¶ 6, 18).

Concerning Peaster's assertion that Kempczinski did not publicly recognize him during a meeting in or around March 2022, there is a perfectly reasonable explanation for why this occurred. The evidence in the record shows that a reference to Peaster and seventeen other McDonald's employees was included in the initial draft of the presentation; however, during the editing process the presentation was streamlined by Mark Ostermann to (i) remove all individuals who held a Field Vice President role; and, for the remaining individuals, (ii) only recognize newly promoted Officers who had never previously held an Officer role. (SF ¶¶ 15-17). This resulted in Peaster and twelve other Officers, many of whom were *not* African American, not being referenced in the final version. (SF ¶ 17).

[redacted]



[redacted]

3. Peaster Has Not Identified Any Similarly Situated Comparators Who Were Treated More Favorably

Peaster has failed to identify any similarly situated non-African American employees who engaged in acts of comparable seriousness and received more favorable treatment. *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) ("Similarly situated employees must be 'directly comparable to the plaintiff in all material respects, which includes showing that the coworkers engaged in comparable rule or policy violations.'").

Peaster cannot point to any other Vice President reporting to Ralls-Morrison who in her opinion exhibited poor judgment, who failed to provide her critical information she requested on multiple occasions, and who also failed on more than one occasion to successfully perform a core job responsibility yet received more favorable treatment than Peaster.

4. McDonald's had Legitimate, Nondiscriminatory Reasons for Terminating Peaster's Employment

Ralls-Morrison terminated Peaster's employment after losing confidence in his ability to protect McDonald's executives at the level she and the Company expected. (SF ¶¶ 84-85). As Peaster himself testified, he had ultimate responsibility for protecting McDonald's executives, especially Kempczinski. (SF ¶¶ 8-9). [redacted]



These noted performance deficiencies clearly support Ralls-Morrison's decision to terminate Peaster's employment. *Dear v. Nicholson*, No. 07CV2366, 2008 WL 4066098, at *4 (N.D. Ill. Aug. 27, 2008) (job expectations not met because plaintiff "failed to create a comprehensive plan for resolving departmental [morale] problems" despite being asked to do so by her supervisor), *aff'd*, 578 F.3d 605 (7th Cir. 2009); *Onofrei v. Gen. Sec. Servs. Corp.*, No. 04CV5560, 2005 WL 3312599, at *5 (N.D. Ill. Dec. 5, 2005) (terminating plaintiff for significant security breaches was a legitimate, non-discriminatory reason). Plaintiff simply cannot show that these reasons are pretext for unlawful race discrimination, especially considering that

█████).[9] *See Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) ("The focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise.")

5. Peaster Cannot Establish "But For" Causation

Critically, Peaster cannot establish that each of the alleged adverse actions would not have occurred *but for* his race. *See Singmuongthong v. Bowen*, 77 F.4th 503, 507 (7th Cir. 2023). Race discrimination must be the "*determinative reason*"—and cannot be a motivating factor or one of several motives. *Arevalo-Carrasco v. Middleby Corp.*, 851 F. App'x 628, 630-31 (7th Cir. 2021).

There is no evidence that any action in this case was taken because of Peaster's race. At his deposition, Peaster even testified that he believed the alleged adverse conduct occurred due to ***other motives***: specifically on the basis of his sex, national origin, and religion. (SF ¶ 88). This admission alone defeats Peaster's attempt to establish "but for" causation as a matter of law.

6. The Undisputed Facts Compel an Inference that McDonald's Did Not Act With Discriminatory Intent

The record is undisputed that Ralls-Morrison made the decisions to: (i) promote Plaintiff to a Vice President position on January 31, 2022; and (ii) terminate his employment in November 2022, thus entitling McDonald's to an inference of non-discrimination based on the common actor defense. *See Stuczynski v. Scotts Co.*, No. 21-CV-00059, 2024 WL 1376210, at *6 (N.D. Ill. Mar. 30, 2024) ("[I]f the person who terminated an employee also hired the employee, factfinders may infer that the person does not harbor discriminatory animus against the terminated employee.").

Moreover, the individual selected to permanently assume Peaster's job responsibilities was also an African-American as was Ralls-Morrison which further renders implausible any suggestion

[9] As it concerns the other alleged adverse employment actions, as explained in Section III.A.2, McDonald's had legitimate, nondiscriminatory, easily explainable reasons for each of those actions and Peaster cannot demonstrate that they are pretextual.

that Peaster's race was the reason his employment was terminated. (SF ¶ 87). *Rooks v. Girl Scouts of Chi.*, No. 95CV206, 1995 WL 562126, at *7 (N.D. Ill. Sept. 21, 1995) (no inference of discrimination where a selected candidate shared the same protected class as plaintiff and the decisionmaker also shared the same protected class), *aff'd*, 95 F.3d 1154 (7th Cir. 1996).

### B. PLAINTIFF'S RETALIATION CLAIM FAILS

Peaster's retaliation claim also fails as a matter of law. Peaster must prove that (1) he engaged in an activity protected by statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022). To establish causation, a plaintiff must show that the employer would not have taken the alleged adverse action *but for* the protected activity. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017). The burden would then shift to McDonald's to articulate a legitimate, non-retaliatory reason for the alleged adverse action. *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 472 (7th Cir. 2018). Peaster bears the burden of showing the stated reason is pretextual. *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009).

1. Peaster Cannot Establish a *Prima Facie* Case of Retaliation For Several Reasons

Peaster did not engage in protected activity because he does not identify any activity in which he opposed a form of discrimination prohibited by Section 1981. Nothing about his remarks during the Town Hall meeting in November 2021 reflect advocacy against unlawful discrimination by McDonald's or Kempczinski for purposes of a Section 1981 claim. To be clear, protected activity under Section 1981 must report or advocate against discrimination that is ***unlawful under § 1981,*** and not just reference the topic of race generally. *See Narbaiz v. TCF Fin. Corp.*, No. 08-CV-17, 2009 WL 1346246, at *2 (N.D. Ill. May 8, 2009) ("the report must include a complaint of . . . discrimination or sufficient facts to raise that inference.") (citation omitted).

Nothing in Plaintiff's remarks suggests that he was complaining of racially discriminatory treatment of himself or other employees by McDonald's.

***Nowhere in his comments did Peaster voice concern, protest, or other objection to discrimination against McDonald's or any McDonald's employee(s), including himself, on the basis of race***. *See Bhat v. Accenture LLP,* 473 F. App'x 504, 507 (7th Cir. 2012) ("general complaints" which failed to link plaintiff's allegations of discrimination to the substance of the general complaints did not constitute protected activity).

Peaster also cannot establish causation. There is no evidence establishing that "but for" his Town Hall meeting comments his employment would not have been terminated or any other alleged adverse action would not have occurred. *Ferrill*, 860 F.3d at 501. Moreover, the one-year gap between Peaster's comments at the Town Hall and the decision to terminate his employment eviscerates any causal connection between the two. The Seventh Circuit has routinely held that gaps in time between asserted protected activity and an adverse employment of even lesser duration than that present here defeats any inference of causation. *See Jones v. A.W. Holdings LLC*, 484 F. App'x 44, 49 (7th Cir. 2012) (collecting cases and noting that the Seventh Circuit has "repeatedly stated that a two-month gap between protected activity and an adverse job action is too long to support a claim of retaliation absent other evidence"). Any causal connection is further undermined by the fact that Peaster was promoted just two months *after* making his remarks at the Town Hall. (SF ¶ 7). *Dranchak v. Akzo Am., Inc.*, No. 92-CV-1295, 1995 WL 470245, at *8 (N.D.

Ill. Aug. 7, 1995) ("[A]ny causal link …is belied by the fact that plaintiff was promoted after his alleged [protected activity]."), *aff'd*, 88 F.3d 457 (7th Cir. 1996).

2. Peaster Cannot Establish that McDonald's Legitimate Non-Retaliatory Reasons for the Alleged Adverse Employment Actions were Pretextual

For the reasons set forth in Sections III.A.2 and III.A.4, McDonald's had legitimate, nonretaliatory reasons for the alleged adverse actions and Peaster cannot demonstrate pretext.

3. McDonald's Offer of Enhanced Retirement Benefits Cannot Support a Retaliation Claim

Finally, Peaster's claim that McDonald's retaliated against him by requiring him to sign a release of claims to receive enhanced retirement benefits known internally as the "Rule of 68" also fails. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] There is no evidence to the contrary and, more importantly, there is no record evidence establishing causation between his Town Hall comments in November 2021 and his non-receipt of Rule of 68 benefits following the termination of his employment one year later.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendant McDonald's motion for summary judgment and dismiss the Complaint *with prejudice*.

Dated: March 19, 2025

PROSKAUER ROSE LLP

*s/Nigel F. Telman*
Nigel F. Telman
Edward C. Young
PROSKAUER ROSE LLP
70 West Madison
Suite 3800
Chicago, Illinois 60602
Phone: (312) 962-3550
Fax: (312) 962-3551

ntelman@proskauer.com
eyoung@proskauer.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2025, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF System, and notice was provided to the following counsel of record:

Carmen D. Caruso
William B. Whitner
CARMEN D. CARUSO LAW FIRM
77 West Washington Street
Suite 1900
Chicago, Illinois 60602
cdc@cdcaruso.com

*/s/ Nigel F. Telman*
Nigel F. Telman