IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PEASTER<br><br>Plaintiff,<br><br>v.<br><br>McDONALD'S CORPORATION, a Delaware corporation, and CHRISTOPHER KEMPCZINSKI<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:22-cv-07037<br><br>Honorable Lindsay C. Jenkins<br><br>Magistrate Judge Heather K. McShain |

**DEFENDANT CHRISTOPHER KEMPCZINSKI'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL ARGUMENT ..... 8

A. SUMMARY JUDGMENT STANDARD ..... 8

B. PLAINTIFF'S DISPARATE TREATMENT CLAIM FAILS ..... 8

1. Peaster Cannot Establish a *Prima Facie* Case of Discrimination or Overcome McDonald's Legitimate, Nondiscriminatory Reasons for the Alleged Adverse Employment Actions That Form the Basis of His Complaint ..... 9

2. The Unrebutted Evidence Establishes that Kempczinski had No Personal Involvement in the Termination of Peaster's Employment ..... 10

3. The Unrebutted Evidence Also Establishes that Kempczinski had No Personal Involvement in Most of the Other Alleged Employment Actions ..... 11

C. PLAINTIFF'S RETALIATION CLAIM FAILS ..... 12

1. Peaster Cannot Establish a *Prima Facie* Case of Retaliation or Overcome McDonald's Legitimate, Nonretaliatory Reasons for Any Alleged Adverse Employment Action ..... 12

2. The Unrebutted Evidence Establishes Kempczinski's Lack of Personal Participation in the Alleged Retaliatory Conduct ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abebe v. Health & Hosp. Corp. of Marion Cnty.*,
35 F.4th 601 (7th Cir. 2022) ....................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................8

*Black v. Safer Found.*,
No. 02CV2751, 2003 WL 21823483 (N.D. Ill. Aug. 6, 2003) ....................13

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020)....................8

*Daigre v. City of Harvey*,
No. 04-CV-4224, 2009 WL 2371727 (N.D. Ill. July 30, 2009)....................12

*Doe v. Bd. of Trs. for Ancona Sch.*,
No. 16CV7601, 2018 WL 3438902 (N.D. Ill. July 17, 2018) ....................1

*Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*,
860 F.3d 494 (7th Cir. 2017) ....................12

*Golla v. Off. of Chief Judge*,
875 F.3d 404 (7th Cir. 2017) ....................8

*Hildebrandt v. Ill. Dep't of Nat. Res.*,
347 F.3d 1014 (7th Cir. 2003) ....................9

*Hobbs v. City of Chicago*,
573 F.3d 454 (7th Cir. 2009) ....................8

*Johnson v. Advoc. Health & Hosps. Corp.*,
892 F.3d 887 (7th Cir. 2018) ....................8, 9

*Madlock v. WEC Energy Grp., Inc.*,
885 F.3d 465 (7th Cir. 2018) ....................11, 12

*McGee v. Ill. Dep't of Transp.*,
No. 02 C 0277, 2004 WL 726110 (N.D. Ill. Apr. 1, 2004)....................13

*Moultrie v. Penn Aluminum Int'l, LLC*,
766 F.3d 747 (7th Cir. 2014) ....................9

*Muhammad v. Univ. of Chi.*,
No. 16-cv-09998, 2019 WL 13075598 (N.D. Ill. Mar. 31, 2019) ....................9

*Muhammad v. Univ. of Chi.*,
No. 16-cv-09998, 2024 WL 4367874 (N.D. Ill. Sept. 30, 2024)....................10

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024)....................11

*Nieman v. Nationwide Mut. Ins. Co.*,
706 F. Supp. 2d 897 (C.D. Ill. 2010) ....................12

*O'Leary v. Accretive Health, Inc.*,
657 F.3d 625 (7th Cir. 2011) ....................12

*Stephens v. Erickson*,
569 F.3d 779 (7th Cir. 2009) ....................12

*Thomas v. Chi. Teachers' Pension Fund*,
No. 21-cv-01844, 2025 WL 815614 (N.D. Ill. Mar. 13, 2025) ....................9

*Thomas v. JBS Green Bay, Inc.*,
120 F.4th 1335 (7th Cir. 2024) ....................11

*Young v. Ford Motor Co.*,
No. 99-cv-0255, 2000 WL 562475 (N.D. Ill. May 8, 2000)....................9

**STATUTES AND RULES**

42 U.S.C. § 1981....................8, 9, 12

FED. R. CIV. P. 56....................8

## I. INTRODUCTION

This case primarily concerns the termination of Michael Peaster's ("Peaster") employment from McDonald's Corp. ("McDonald's" or the "Company") on November 7, 2022. Peaster claims that the decision to terminate his employment was directed by McDonald's CEO, Chris Kempczinski ("Kempczinski") and was discriminatory and retaliatory. Other than pure speculation from Plaintiff, there is no evidence in the record that Kempczinski made or otherwise directed the decision to terminate Peaster's employment. No one with knowledge on how the termination decision was made testified as such and no documents support such a conclusion or even an inference. The undisputed evidence, including the sworn testimony of McDonald's Global Chief Legal Officer, Desiree Ralls-Morrison ("Ralls-Morrison") and Kempczinski, unequivocally establishes that the decision to terminate Peaster's employment was made by Ralls-Morrison. Moreover, Peaster admitted in his deposition that he has no personal knowledge to the contrary. The lack of personal participation by Kempczinski compels dismissal of the claims asserted against him *as a matter of law*. *Doe v. Bd. of Trs. for Ancona Sch.*, No. 16CV7601, 2018 WL 3438902, at *5 (N.D. Ill. July 17, 2018) (granting summary judgment where the individual defendants were not personally involved in the alleged conduct).

The remainder of Peaster's allegations regarding Kempczinski are equally baseless—*e.g.*, that on one occasion he was not permitted to fly on the corporate jet, that his budget requests were not approved, or that comments Peaster alleges he made at a Town Hall in November 2021 motivated the termination of his employment over a year later and after he was promoted and after multiple security failures by his team. His arguments are not the product of straight-line reasonable inference, only self-serving speculation. Indeed, discovery has confirmed that Kempczinski was not personally involved in most of the conduct about which Peaster now complains.

Notwithstanding, Peaster's claims against Kempczinski fail independently for the reasons set forth in McDonald's Memorandum of Law in Support of Its Motion for Summary Judgment. **First**, aside from the decision to terminate Peaster's employment, the conduct at issue in Peaster's Complaint is not actionable. **Second**, Peaster did not meet the Company's legitimate performance expectations. **Third**, there is no evidence that Peaster was treated differently from any similarly situated non-African American employee. **Fourth**, there is no evidence that Ralls-Morrison did not honestly and in good faith believe that Peaster was not meeting the Company's legitimate performance expectations at the time she made the decision to terminate his employment. **Fifth**, there is no evidence that Peaster engaged in protected activity or that his comments in November 2021 had any connection to the decision to terminate his employment one year later. Summary Judgment in Kempczinski's favor is appropriate on this record.

## II. FACTUAL BACKGROUND

Effective January 31, 2022, Ralls-Morrison made the decision to promote Peaster to Vice President, Global Chief Safety, Security and Intelligence Officer of McDonald's (hereinafter, "CSO"). (SF ¶ 7). In that role, Peaster was expected to take on enhanced global responsibilities and be personally involved in and responsible for global travel and security of McDonald's executives. (SF ¶ 8). Peaster oversaw McDonald's Global Security, Safety, and Intelligence Department ("GSSI") and had primary responsibility for protecting Kempczinski. (SF ¶¶ 7-9). Peaster held that role until his employment was terminated on November 7, 2022. (SF ¶¶ 2, 7). Ralls-Morrison made the decision to both promote Peaster and to terminate his employment. (SF ¶¶ 7, 84). Both Peaster and Ms. Ralls-Morrison are African American. (SF ¶ 84; Compl. ¶ 1, ECF No. 1).

Case: 1:22-cv-07037 Document #: 143 Filed: 03/19/25 Page 7 of 19 PageID #:998



3



4







Ralls-Morrison made the decision to terminate Peaster's employment and Kempczinski did not need to approve or otherwise "sign off" on that decision. (SF ¶¶ 84, 86). At his deposition, Peaster admitted that he had no basis for believing otherwise, testifying he possesses "no knowledge" that Kempczinski participated in the decision to terminate his employment. (SF ¶ 86). Rather, it was Ralls-Morrison's decision because she oversaw the Legal Department. (*Id.*). He made clear in his deposition that the decision to terminate Peaster's employment was Ralls-Morrison's alone to make. (*Id.*).

## III. LEGAL ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment" if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Peaster must set forth specific admissible facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. PLAINTIFF'S DISPARATE TREATMENT CLAIM FAILS

Peaster asserts a claim for disparate treatment in violation of Section 1981 based largely on the termination of his employment. Courts in the Seventh Circuit reviewing race discrimination claims under 42 U.S.C. §1981 evaluate whether "the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the . . . adverse employment action." *Golla v. Off. of Chief Judge,* 875 F.3d 404, 407 (7th Cir. 2017) (alteration in original) (citation omitted).[2] Critically, the U.S. Supreme Court has made clear that, for a Section 1981 claim, "a plaintiff must … ultimately prove that, ***but for*** race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added).

Courts may utilize the *McDonnell Douglas* framework for evaluating discrimination claims. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (the well-known *McDonnell Douglas* framework remains an efficient way to organize, present, and assess

---

[2] Courts look to Title VII authority to analyze cases under Section 1981 because both require plaintiff to prove the same *prima facie* elements. *See Hobbs v. City of Chicago*, 573 F.3d 454, 460 n.1 (7th Cir. 2009).

evidence in discrimination cases). Applying the *McDonnell Douglas* framework to Peaster's disparate treatment claim, he must show that (1) he was a member of a protected class; (2) he met McDonald's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated non-African American individuals were treated more favorably. *Id.* at 894-95; *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 752-53 (7th Cir. 2014); *Thomas v. Chi. Teachers' Pension Fund*, No. 21-cv-01844, 2025 WL 815614, at *4-5 (N.D. Ill. Mar. 13, 2025) (granting summary judgment on race discrimination and retaliation claims where plaintiff failed to offer evidence that would allow a factfinder to conclude that plaintiff's job performance met defendant's legitimate expectations).

If Peaster makes a *prima facie* case of discrimination, the burden shifts to McDonald's to articulate a legitimate, non-discriminatory reason for the adverse employment action. Peaster must then demonstrate that the reasons are pre-textual and that ultimately, McDonald's actions were based on impermissible, discriminatory motives. *Young v. Ford Motor Co.*, No. 99-cv-0255, 2000 WL 562475, at *4 (N.D. Ill. May 8, 2000).

"Personal liability cannot be imposed on an individual for a company's violation of § 1981 unless that individual personally participated in the discrimination." *Muhammad v. Univ. of Chi.*, No. 16-cv-09998, 2019 WL 13075598, at *3 (N.D. Ill. Mar. 31, 2019) (citing *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003)). A plaintiff also bears the burden of establishing that the individual defendant possessed an "intent to discriminate on the basis of race." *Id.* (citation omitted).

1. Peaster Cannot Establish a *Prima Facie* Case of Discrimination or Overcome McDonald's Legitimate, Nondiscriminatory Reasons for the Alleged Adverse Employment Actions That Form the Basis of His Complaint

Plaintiff's Section 1981 disparate treatment fails as a matter of law because he cannot: (1) demonstrate that he was meeting McDonald's legitimate performance expectations; (2) establish

that, other than the termination of his employment, the workplace conduct of which he complains constitutes adverse employment actions; (3) identify any similarly situated comparators who engaged in comparable conduct that were treated more favorably; (4) establish that McDonald's legitimate, nondiscriminatory, performance-based reasons for his termination were pretextual; (5) establish that McDonald's legitimate, nondiscriminatory reasons for any other alleged adverse employment actions were pretextual; and (6) establish that his race was the "but for" cause of his termination or any other adverse employment action.

Kempczinski fully incorporates each of the arguments advanced in McDonald's Memorandum of Law in Support of its Motion for Summary Judgment filed contemporaneously herewith as if more fully set forth herein.

      2.      The Unrebutted Evidence Establishes that Kempczinski had No Personal Involvement in the Termination of Peaster's Employment

Peaster's disparate treatment claim against Kempczinski is unsustainable. There is no evidence establishing a genuine dispute of fact that Ralls-Morrison – and not Kempczinski – made the decision to terminate Peaster's employment, or that Kempczinski did not need to approve or otherwise sign-off on the termination decision. (SF ¶¶ 84, 86). Moreover, Peaster admitted during his deposition that he had no basis for believing otherwise and testified that he possesses no knowledge that Kempczinski participated in the decision to terminate his employment. (SF ¶ 86). The record is likewise devoid of any evidence that Kempczinski directed or participated in the decision to terminate Peaster's employment. There is also no evidence in the record that Kempczinski possessed any intent to discriminate against Peaster on the basis of his race. *See Muhammad v. Univ. of Chi.*, No. 16-cv-09998, 2024 WL 4367874, at *10 (N.D. Ill. Sept. 30, 2024) (granting individual defendant's motion for summary judgment where plaintiff could not demonstrate that individual defendant harbored discriminatory animus against her).

      3. The Unrebutted Evidence Also Establishes that Kempczinski had No Personal Involvement in Most of the Other Alleged Employment Actions

There is no evidence that Kempczinski was involved in most of the other alleged adverse actions presented in the Complaint, namely that: (1) Peaster was not permitted to fly on McDonald's corporate jet on one occasion; and (2) Peaster's budgeting and backfilling requests were allegedly denied.[3] As the undisputed evidence demonstrates, the decision of who flies on the corporate jet is determined by a process overseen by Mark Ostermann, Kempczinski's Chief of Staff. (SF ¶¶ 59-63). Kempczinski is not involved in that process and, as pertinent here, was not involved in that process for the Mexico City/São Paulo trip. (*Id.*). Finally, Kempczinski was not responsible for approving Peaster's budget requests, including backfilling positions within GSSI. (SF ¶ 40).

Once these allegations are set aside, all that remains concerning Kempczinski are Peaster's allegations that Kempczinski ignored Peaster. As set forth in McDonald's Memorandum of Law in Support of its Motion for Summary Judgment; however, such allegations are not actionable because: (i) they do not constitute adverse employment actions; (ii) Peaster cannot establish that the legitimate, nondiscriminatory explanations provided by McDonald's are pretextual; and (iii) he cannot establish that such conduct, if it even occurred at all, was because of his race.

[3] As set forth in McDonald's Memorandum of Law in Support of its Motion for Summary Judgment and incorporated herein, none of these allegations rise to the level of an adverse employment action. An adverse employment action must be tangible such that it constitutes "some harm respecting an identifiable term or condition of employment" that leaves the plaintiff "worse off," and none of these allegations rise to that level. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024); *see also Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336-37 (7th Cir. 2024); *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) ("[N]ot everything that makes an employee unhappy is an actionable adverse action." (citation omitted)).

## C. PLAINTIFF'S RETALIATION CLAIM FAILS

Peaster's retaliation claim also fails as a matter of law. Peaster must prove that (1) he engaged in an activity protected by statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022).

A "[p]rotected activity" occurs when there "is 'some step in the opposition to a form of discrimination that the statute prohibits.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (citing *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)). To establish the causal connection, a plaintiff must establish that the employer would not have taken the alleged adverse action *but for* the protected activity. *Id.* at 501 (emphasis added). If Peaster can establish a *prima facie* case, the burden shifts to McDonald's to articulate a legitimate, non-retaliatory reason for the alleged adverse action. *Madlock*, 885 F.3d at 472. Peaster ultimately bears the burden of showing the stated reason is pretextual. *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009).

Like disparate treatment claims discussed above, Section 1981 retaliation claims must involve personal participation in the retaliatory conduct by the individual defendant. *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 909 (C.D. Ill. 2010); *Daigre v. City of Harvey,* No. 04-CV-4224, 2009 WL 2371727, at *2 (N.D. Ill. July 30, 2009) (Individual liability under § 1981 is "premised upon personal participation in the alleged discrimination.").

### 1. Peaster Cannot Establish a *Prima Facie* Case of Retaliation or Overcome McDonald's Legitimate, Nonretaliatory Reasons for Any Alleged Adverse Employment Action

Kempczinski incorporates each of the arguments advanced in McDonald's Memorandum of Law in Support of its Motion for Summary Judgment concerning Peaster's retaliation claim as if fully set forth herein. Peaster's retaliation claim fails because, among other things: (1) he cannot

demonstrate that he engaged in protected activity; (2) he cannot show any causal connection between any protected activity and any alleged adverse action; (3) McDonald's has presented legitimate, nonretaliatory reasons for terminating Peaster's employment and there is no evidence of pretext; and (4) McDonald's had legitimate, nonretaliatory reasons for any other alleged adverse employment actions.

2. The Unrebutted Evidence Establishes Kempczinski's Lack of Personal Participation in the Alleged Retaliatory Conduct

As already discussed, Kempczinski did not make the decision to terminate Peaster's employment, nor did he approve or otherwise sign off on that decision. (SF ¶¶ 84, 86). There is no evidence in the record to the contrary and Peaster himself admits that he has no knowledge to the contrary. (SF ¶ 86). Nor was Kempczinski involved in most of the other alleged adverse employment actions, as previously explained herein.

Further, there is not a single allegation in this action—much less any evidence or testimony—that Kempczinski had any involvement in determining Peaster's eligibility for Rule of 68 benefits.

Because Peaster cannot demonstrate that Kempczinski had any personal involvement in any of the alleged adverse employment actions, his retaliation claim fails and Kempczinski is entitled to summary judgment. *See McGee v. Ill. Dep't of Transp.*, No. 02CV0277, 2004 WL 726110, at *3 (N.D. Ill. Apr. 1, 2004) (granting individual defendant's motion for summary judgment as to plaintiff's Section 1981 retaliation claim where plaintiff could not demonstrate personal participation); *Black v. Safer Found.*, No. 02CV2751, 2003 WL 21823483, at *8 (N.D. Ill. Aug. 6, 2003) (same).

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendant Christopher Kempczinski's motion for summary judgment and dismiss Peaster's Complaint with prejudice.

Dated: March 19, 2025

PROSKAUER ROSE LLP

*s/Nigel F. Telman*

Nigel F. Telman
Edward C. Young
PROSKAUER ROSE LLP
70 West Madison
Suite 3800
Chicago, Illinois 60602
Phone: (312) 962-3550
Fax: (312) 962-3551
ntelman@proskauer.com
eyoung@proskauer.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2025, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF System, and notice was provided to the following counsel of record:

Carmen D. Caruso
William B. Whitner
CARMEN D. CARUSO LAW FIRM
77 West Washington Street
Suite 1900
Chicago, Illinois 60602
cdc@cdcaruso.com

*/s/ Nigel F. Telman*
Nigel F. Telman